## COMMONWEALTH vs. JEFFREY L. CLEMENS.

No. 08-P-2138.

Plymouth. January 11, 2010. - July 8, 2010.

Present: McHugh, Green, & Fecteau, JJ.

*Practice, Criminal,* Assistance of counsel, Judicial discretion, Self-representation. *Constitutional Law,* Assistance of counsel, Waiver of constitutional rights. *Attorney at Law,* Attorney-client relationship, Withdrawal.

This court was unable to discern any prejudice to a criminal defendant arising from the trial judge's allowance of the defendant's request to discharge his appointed counsel, where, notwithstanding that the judge's colloquy with the defendant was inadequate both for the defendant to justify his dissatisfaction with counsel and for the judge to make an informed decision, there was insufficient cause for the removal of counsel [237-239]; however, the manner in which the judge coupled the allowance of the defendant's request to discharge his appointed counsel with the denial of the defendant's request for the appointment of new counsel, a ruling that required the defendant to represent himself, warranted reversal of the defendant's conviction, where the defendant did not expressly waive his right to the assistance of counsel [239-240]; and where, given that an implied waiver of counsel is not the automatic consequence of a defendant's insistence on the discharge of counsel, the defendant did not by his conduct implicitly waive his right to counsel, given the absence of a warning by the judge that the defendant could choose either to continue with his appointed counsel or represent himself at trial, and the lack of a basis on which the judge could conclude that the defendant was aware of the difficulties of self-representation [240-243].

COMPLAINT received and sworn to in the Hingham Division of the District Court Department on May 13, 2005.

The case was tried before *Ronald F. Moynahan,* J.

*Matthew S. Cameron* for the defendant.

*Audrey Anderson Kachour,* Assistant District Attorney, for the Commonwealth.

FECTEAU, J. The defendant appeals from his conviction of

disorderly conduct, in violation of G. L. c. 272, § 53, following a jury trial in the District Court. This appeal in effect challenges the manner in which the judge coupled allowance of the defendant's request to discharge appointed counsel (denying his request for new counsel) with a decision to require the defendant to represent himself. In particular, the defendant contends that there was inadequate colloquy between the judge and the defendant to inform the defendant of the risks and perils of going forward if unrepresented by counsel, and that such information was required to be given separately and prior to warning that if the defendant insisted upon the discharge of appointed counsel, he would be required to represent himself. Without such a warning, the defendant claims there was an inadequate basis for the judge to conclude that the defendant was sufficiently informed to warrant an implied waiver of his right to counsel.[1] Because we view the colloquy as being inadequate to support a finding of a knowing waiver of counsel in these circumstances, and because "the right to the assistance of counsel is essential to individual liberty and security, and to a fair trial, its erroneous denial can never be treated as harmless error," we must reverse.[2] *Commonwealth* v. *Means*, 454 Mass. 81, 88-89 (2009), citing *Chapman* v. *California*, 386 U.S. 18, 23 & n.8 (1967).

*Factual background.* The jury could have found the following facts. On May 12, 2005, Scituate police Sergeant Michael O'Hara was dispatched to an address on Old Oaken Bucket Road to look for a green Chevy Blazer. As he arrived there, he saw a green Jeep Wagoneer that was backed into a driveway of a house across from the address in question. As O'Hara approached in his cruiser, the Jeep drove onto the street; O'Hara motioned for the defendant, who was driving, to pull over, but the defendant kept going. After activating his police lights, O'Hara stopped the defendant for an investigative inquiry and noticed that he appeared to be nervous and anxious. The defendant told O'Hara that he was a graduate student at a local university

---

[1]This issue was raised several times before and after jury empanelment. After empanelment, the defendant moved for mistrial, which the judge denied.

[2]Because of the result we reach, there is no need to address the claims of the defendant that the judge was biased and prejudiced him in the eyes of the jury and that several pretrial omissions of counsel constituted ineffective assistance of counsel.

and was investigating something for the Federal Bureau of Investigation (FBI), and asked O'Hara to contact a certain FBI agent. O'Hara asked the defendant to step out of the car and the defendant complied. O'Hara asked the defendant whether he had any mental health issues, to which the defendant said that he did not.

With the defendant's consent, O'Hara looked inside the defendant's vehicle and found a plot plan for the address in question, a private residence. When another officer arrived at the scene, O'Hara returned to the residence and spoke to Shelly Laveroni, the person who had called the police. She told O'Hara that the defendant had identified himself as a private investigator.[3] O'Hara returned to the defendant and asked him if he was a private investigator. The defendant responded that he was not, demanded to know who said that he was, and denied stating that he was a private investigator. O'Hara told him that he was going to investigate the private investigator claim further, whereupon the defendant became angry, began to flail his arms, and raised his voice. Nonetheless, the defendant was told that he was free to go but might be summonsed upon further investigation.

The defendant continued to debate the matter, but O'Hara again told him that they were done, that he was free to go, and began walking back to his cruiser. Appearing to O'Hara as enraged, the defendant said, "[W]e're going to settle this right fucking now," and quickly took two or three steps toward O'Hara. With the assistance of the other officer, O'Hara arrested the defendant for disorderly conduct.[4]

*Procedural background.* When this three year old case[5] was called for trial on September 18, 2008, the attorneys for both parties first reported to the judge their readiness for trial. Prior

---

[3]At trial, the defendant testified that he was there to inquire about Jerry Laveroni, the stunt man, not a former Drug Enforcement Administration (DEA) agent, on a matter from Los Angeles involving an actor. The defendant also said that he was looking for a van that was associated with a complaint that he had made to the FBI in 2003 and 2004.

[4]Additional charges of harassment and operating as an unlicensed private detective in violation of G. L. c. 147, § 23, arising from this same incident were brought against the defendant on June 10, 2005; these charges were not joined for trial with the offense now on appeal.

[5]The judge was informed at one point that the delay was caused in part due to the defendant being held in custody out of State for an undisclosed reason.

to a jury venire being in the courtroom for empanelment, defense counsel on one occasion and the defendant twice sought to address the judge, but these attempts were not acknowledged, nor was inquiry made of the reasons the defendant wanted to speak. After empanelment and after the jury were taken from the courtroom, defense counsel informed the judge that the defendant had tried to express to the court his disagreement with counsel, that the defendant did not believe that they were ready for trial, and that a deep division between them had developed over trial strategy that might affect their relationship.[6] The defendant added that he wanted to discharge his attorney (his third, and the second of two attorneys appointed in succession) and requested the opportunity to "seek other counsel." The judge informed the defendant that if the defendant wanted to discharge his attorney, he would not appoint another attorney, and joined in one question whether the defendant wanted to discharge his counsel and represent himself.[7] In spite of several attempts by the defendant

---

[6]These exchanges were as follows:

ATTORNEY GREENSPAN: "Mr. Clemens has requested that I ask of the Court a mistrial. He tried and I tried to signal to the Court prior to the commencement of trial that Mr. Clemens did not feel that we were ready.

"I — Mr. Clemens and I have developed a deep division of opinion over how the case should be tried and so I would request a mistrial at this point."

THE COURT: "Alright."

ATTORNEY GREENSPAN: "If that is not granted, Mr. Clemens has asked that I request a need to withdraw."

. . .

THE COURT: "And so without regard to that, if your client does not want you to represent him, that is his right. So may we swear in Mr. Clemens?"

[7]An excerpt pertinent to this exchange is provided here [the full exchange on this issue is reproduced in the appendix that follows the opinion]:

THE COURT: "Okay. You don't want Mr. Greenspan to represent you?"

DEFENDANT: "That's correct."

THE COURT: "Okay. Are you making this decision from an informed capacity, you want to represent yourself?"

to have the judge uncouple the questions, the defendant's reiteration of his request for the discharge of his attorney, which the judge allowed, resulted in the judge's decision to require the defendant to represent himself, appointing his former defense counsel as standby counsel.

On September 25, 2008, a motion for a "mistrial and immediate release," essentially a motion for a new trial under Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001), was filed on behalf of the defendant by his brother. The motion was heard on October 8, 2008, at which time the defendant filed a motion to revise and revoke under Mass.R.Crim.P. 29(a), 378 Mass. 899 (1979), which was also heard at that time. At this hearing, the defendant detailed for the first time his belief that defense counsel had failed in three respects: (1) to follow the defendant's request to join all of the offenses that stemmed from the May, 12, 2005, incident; (2) to summons additional trial witnesses; and (3) to obtain a transcript of the 911 tape. The latter two evidentiary issues appear to be materially related to the later charged offenses. The motions were denied by the trial judge. The defendant has not claimed appeal from the orders denying his motions.

---

DEFENDANT: "Well that's actually two questions."

THE COURT: "Well bear with me. I'll make — I'll ask the questions one at a time then since that was two questions according to you.

"The first question is do you want to represent yourself if you're going to — you want me to discharge — are you appointed?"

ATTORNEY GREENSPAN: "Yes, your Honor."

THE COURT: "Alright, so do you want me to strike Mr. Greenspan's appointment and you want to represent yourself, is that what you're telling me?"

DEFENDANT: "No. I, first of all I — I would make a decision that I wanted to withdraw Mr. Greenspan —"

THE COURT: "Do you want me to dis —"

DEFENDANT: "However, that's not to imply that I want to represent myself. I wish to seek other counsel."

THE COURT: "Okay. Your motion is denied. Do you want Mr. Greenspan to represent you here today?"

DEFENDANT: "No, I do not."

*Discussion. Motion for new counsel.* The judge did not err when he denied the defendant's motion for new counsel. The defendant has the burden of showing good cause to remove appointed counsel, which includes, but is not limited to, "a conflict of interest, incompetence of counsel, or an irreconcilable breakdown in communication." *Commonwealth* v. *Chavis*, 415 Mass. 703, 712 (1993). "[T]he decision to honor a defendant's request for change of appointed counsel is a matter left to the sound discretion of the trial judge, but after he has given the defendant the opportunity to articulate his reasons." *Commonwealth* v. *Moran*, 388 Mass. 655, 659 (1983). While there is no bright-line test, the "judge must blend 'an appreciation of the inevitable difficulties of trial administration with a concern for constitutional protections.' " *Commonwealth* v. *Britto*, 433 Mass. 596, 600 (2001), quoting from *Commonwealth* v. *Dunne*, 394 Mass. 10, 14 (1985).

While the Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel, it does not "require a 'meaningful attorney-client relationship,' " *Commonwealth* v. *Tuitt*, 393 Mass. 801, 806 (1985), quoting from *Morris* v. *Slappy*, 461 U.S. 1, 14 (1983), nor does it guarantee the right to any particular court-appointed counsel. See *Commonwealth* v. *Moran, supra*. Moreover, a judge has "broad discretionary power . . . over requests for last-minute shifts in representation which threaten to delay a proceeding." *Commonwealth* v. *Johnson*, 424 Mass. 338, 341 (1997), quoting from *Commonwealth* v. *Jackson*, 376 Mass. 790, 796 (1978). The most common problem accompanying a request for a change of counsel is the need for a continuance of the trial if the motion is allowed or, in the case of an empanelled jury, a mistrial. *Commonwealth* v. *Britto, supra*. See, e.g., *Commonwealth* v. *Diatchenko*, 387 Mass. 718, 727-728 (1982). Here, the judge faced such a situation with the defendant's request for new counsel on the day of his trial.

At the beginning of trial, the defendant cryptically stated that he and his lawyer were "in great dispute about what pretrial motion . . . should have been done or what should be done."[8]

---

[8]From the absence in the record of any other reasons expressed by the defendant for his dissatisfaction with defense counsel, we infer that the allusion by counsel to the defendant's opinion that they were not ready to proceed,

The defendant's first attempt to speak on the cusp of jury empanelment, followed immediately thereafter with his actual request to discharge defense counsel, was made with no prior report of problems between himself and his attorney, who was the second of two court-appointed attorneys he had over the course of the prior nine months. The record does not show that the defendant complained before trial of defense counsel's efforts or strategy decisions, including the failure to move for a joinder or to arrange for these additional witnesses, or during trial when he had the opportunity to explain to the judge the reasons why he felt that they were not ready to proceed. Moreover, neither prior to nor during trial did defense counsel ever state that he was unprepared. See *Commonwealth* v. *O'Brien*, 380 Mass. 719, 723 (1980). Contrast *Commonwealth* v. *Cavanaugh*, 371 Mass. 46, 52-54 & n.3 (1976) (counsel characterized himself as unprepared). The judge's decision to permit the discharge of defense counsel and to require the defendant to proceed without counsel appears to have been made without any inquiry as to the cause for the request to remove defense counsel, and we conclude that there was insufficient cause stated for removal of counsel. That is not to say, however, that we agree with the manner in which the judge conducted the inquiry.

We acknowledge the pressure a District Court judge faces with large volumes of cases and the need to process them efficiently, but such concerns cannot excuse the failure to provide an opportunity for the defendant to address the court about dissatisfaction with counsel. The defendant was not permitted to speak prior to empanelment, and after jury selection, the judge's colloquy with the defendant, once he was given the opportunity to speak on this subject, was inadequate both for the defendant to justify his dissatisfaction with counsel and for the judge to make an informed decision. "[A] judge must permit a defendant to advance his reasons for wanting to discharge his attorney.

coupled with counsel's statement that they were "deeply divided" over trial strategy, referred to the pretrial matters that the defendant asserted in his post-trial motion for mistrial and immediate release and then orally at the hearing. These matters relate, in the main, to the additional charges that were brought later. See note 4, *supra*. The defendant apparently wanted counsel to arrange for the joinder for trial of all charges that emanated from this incident, to summons additional witnesses to testify, and to arrange for a transcription of the 911 call made by Laveroni that brought the police to that location.

The appropriate practice, which should have been followed at the time of trial in this case, is to hear the defendant's offer of specifications so that the judge's discretion will be exercised 'on an informed basis.' " *Commonwealth* v. *Moran,* 388 Mass. at 659, quoting from *Lamoureux* v. *Commonwealth,* 353 Mass. 556, 560 (1968). In *Lamoureux* v. *Commonwealth* the Supreme Judicial Court noted that "[i]t cannot be assumed that the average criminal defendant has intelligently assessed the competence of assigned counsel prior to the opening of the trial itself and objections thereafter are interposed only to create delay. It would have been better practice had the trial judge taken occasion to hear the petitioner's offer of specifications." *Ibid.*

For these reasons, a judge must provide a defendant an adequate opportunity to explain his reasons. However, even if the defendant here had been given inadequate opportunity, based upon his reasons given posttrial (see note 8, *supra*), we do not think there was sufficient cause to remove counsel and that the omission does not require reversal in this instance.[9] Even though the defendant did not have the right to insist on the discharge of counsel, his request for the discharge of his appointed counsel was granted. In isolation, based on the record before us, "we are unable to discern any prejudice to the defendant, because he did not have a valid reason to discharge his attorney." *Commonwealth* v. *Moran,* 388 Mass. at 660. However, we cannot conclude that the manner in which the judge coupled the discharge of counsel with his ruling that required the defendant to represent himself leads to a similar outcome.

*Implied waiver of the right to counsel.* More problematic is the defendant's contention that he did not knowingly and voluntarily waive his right to counsel. The defendant and the judge engaged in a truncated colloquy that served only to inform the defendant that the discharge of his attorney would lead to his self-representation, without any inquiry into the reasons for

[9]The reasons expressed by the defendant for removal of counsel in his posttrial motion for mistrial and immediate release (see note 8, *supra*) were insufficient, as he has not shown justification for joinder of the charges nor the materiality of the witnesses that he wanted to call or the content of the 911 call. Indeed, the record reveals reasonable strategic decisions to restrict the admissibility of the evidence of the interactions between Laveroni and the officers, which would likely have been admissible had the charges been joined and testimony given by Laveroni.

the request or the provision of information to the defendant concerning the risks of being unrepresented. After denying the defendant's request for new counsel, the judge asked the defendant if he wanted defense counsel to represent him, the defendant responded no, and the judge discharged defense attorney.

A criminal defendant can effectively waive his right to the assistance of counsel by an affirmative, express waiver of his right to counsel at trial. The defendant correctly points out that such a waiver must be knowing, voluntary, and intelligent to be effective. See *Faretta* v. *California*, 422 U.S. 806, 835-836 (1975); *Commonwealth* v. *Appleby*, 389 Mass. 359, 366, cert. denied, 464 U.S. 941 (1983). See also *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938). In addition, an express waiver by a defendant can be made only after appropriate colloquy by the judge, and the waiver should be memorialized in writing and signed by the defendant. See S.J.C. Rule 3:10(3), as amended, 416 Mass. 1306 (1993); *Commonwealth* v. *Means*, 454 Mass. at 89-90. It is clear from the circumstances here that this case does not involve an express waiver of counsel and that the procedures for this form of waiver were not followed: the defendant did not request or express that his right to counsel be waived, such waiver was not formalized in writing and signed by the defendant, and there was no appropriate colloquy.[10]

In the absence of an express waiver, a defendant can implicitly waive his right to counsel by his conduct, provided that the defendant was previously warned by a judge against the misconduct. See *id.* at 90-91. As was observed in *Commonwealth* v. *Moran*, 17 Mass. App. Ct. 200 (1983), "[t]his aspect of the waiver test is therefore governed by the settled rule that 'a [defendant's] refusal without good cause to proceed with able appointed counsel is a "voluntary" waiver' of the right to counsel." *Id.* at 207-208, quoting from *Commonwealth* v. *Appleby, supra* at 366-367.

---

[10]"That a defendant was not asked to sign a written waiver of counsel and the judge did not certify such a waiver, as required under Mass.R.Crim.P. 8, as amended, 397 Mass. 1226 (1986), and S.J.C. Rule 3:10, as amended, 416 Mass. 1306 (1993), is not conclusive of a lack of waiver." *Commonwealth* v. *Pamplona*, 58 Mass. App. Ct. 239, 242-243 (2003). In such circumstances, however, there must be "sufficient other evidence in the record to demonstrate that the waiver was voluntary and intelligent." *Commonwealth* v. *Leonardi*, 76 Mass. App. Ct. 271, 277 (2010).

See *Commonwealth* v. *Means*, 454 Mass. at 90-91; *Commonwealth* v. *Pamplona*, 58 Mass. App. Ct. 239, 240 (2003) (defendant's refusal, without good cause, to proceed with appointed counsel constituted a voluntary waiver of his right to counsel).

Waiver of counsel by conduct, also termed abandonment of counsel, differs from forfeiture of the right to counsel, which does not require prior warning to the defendant by a judge. See *Commonwealth* v. *Means*, 454 Mass. at 89 n.14. The circumstances of this case do not invoke forfeiture. "Forfeiture is an extreme sanction in response to extreme conduct [by the defendant] that imperils the integrity or safety of court proceedings. See, e.g., *United States* v. *Leggett*, 162 F.3d 237 (3d Cir. 1998) (criminal defendant who physically assaulted counsel held to forfeit right to counsel)." *Commonwealth* v. *Means*, 454 Mass. at 92.

In discussing abandonment of counsel, the Supreme Judicial Court has stated: "In the context of indigent defendants, waiver by conduct generally occurs when a defendant competent to waive counsel moves to remove his attorney without good cause, the motion is denied, and the judge warns the defendant that he will lose his right to an attorney if he engages in dilatory or abusive conduct towards his attorney. . . . If the defendant then engages in the very misconduct he was warned not to commit, the misconduct may be treated "as an implied request to proceed pro se and, thus, as a waiver of the right to counsel," because the defendant had been warned of the consequences of such misconduct. . . . The acts leading to waiver by conduct need not be violent, but they must be highly disruptive of orderly or safe court proceedings. . . . The key to waiver by conduct is misconduct occurring *after an express warning has been given* to the defendant about the defendant's behavior and the consequences of proceeding without counsel" (emphasis in original).[11] *Id.* at 90-91.

We note at the outset that the defendant was not warned

---

[11]Federal cases have also discussed implied waiver of counsel in similar circumstances. See, e.g., *United States* v. *Allen*, 895 F.2d 1577, 1579 (10th Cir. 1990) (although court viewed defendant's conduct as amounting to a waiver of counsel, court must still ensure waiver was knowing and intelligent); *United States* v. *Bauer*, 956 F.2d 693, 695 (7th Cir.), cert. denied, 506 U.S. 882 (1992) (failure to hire counsel where defendant has financial ability

"that he had one of two choices: continue with his appointed counsel or represent himself at trial." *Id.* at 96-97 n.23. See *Commonwealth* v. *Babb*, 416 Mass. 732, 733-734 (1994) (abandonment found where "intelligent and articulate" defendant sought removal of counsel without good cause, was warned by judge of the difficulties of self-representation, thereafter physically assaulted his attorney, and, as found by judge, was "attempting to forestall his trial and disrupt the prosecution by forcing a last minute change of his court-appointed counsel"). Here, self-representation occurred simply as a result of the defendant's request for the judge to discharge counsel. Self-representation is not the automatic consequence of such a request; an implied waiver of counsel cannot occur so simply as occurred here. The judge's ruling requiring the defendant to represent himself was therefore erroneous.

Importantly, there was no basis upon which the judge could conclude that the defendant was aware of the difficulties and risks of self-representation. In *Commonwealth* v. *Pamplona, supra*, we held that "[a] defendant who refuses without good cause to proceed with appointed counsel may permissibly be confronted with the choice of continuing his representation by appointed counsel or acting pro se." However, such a result can only occur if the defendant is warned of the difficulties of self-representation, and "knowingly and intelligently" insists that "appointed counsel not represent him under any circumstances." *Id.* at 241-242. In that case, the colloquy was considered adequate since the judge had "advised the defendant that difficulties can attend self-representation and that knowledge of the law and the rules of evidence would be helpful, . . . [and] the defendant, who had a substantial record of convictions and was already serving a sentence for assault and battery by means of a dangerous weapon, was 'adequately aware of the seriousness of the charges, the magnitude of his undertaking, the availability of advisory counsel, and the disadvantages of self-representation.' " *Ibid.*, quoting from *Commonwealth* v. *Jackson*, 376 Mass. at

---

to do so constitutes a waiver by conduct); *United States* v. *Goldberg*, 67 F.3d 1092, 1101 (3d Cir. 1995) (waiver by conduct "requires that a defendant be warned about the consequences of his conduct, including the risks of proceeding pro se," together with a finding that defendant has engaged in the misconduct).

795. Such was not the case here, however, for while the defendant insisted on the discharge of his counsel, the judge conducted no such colloquy and administered no warning concerning the difficulties attendant to self-representation. Moreover, the judge made no finding, and there is nothing in the record to support a finding, that the defendant possessed such understanding from experience in the criminal justice system. The record fails to show any basis to conclude at the time of the judge's ruling that the defendant had "a sense of the magnitude of the undertaking and the 'disadvantages of self-representation,' an awareness that there are technical rules governing the conduct of a trial, and that presenting a defense is not a simple matter of telling one's story. In addition, the [defendant] should have a general appreciation of the seriousness of the charge and of the penalties he may be exposed to before deciding to take a chance on his own skill." *Commonwealth* v. *Moran*, 17 Mass. App. Ct. at 208, quoting from *Maynard* v. *Meachum*, 545 F.2d 273, 279 (1st Cir. 1976).

As we noted, the defendant failed to provide sufficient cause for removal of counsel. Had the judge learned, on a more timely basis after appropriate inquiry, the reasons for the discharge of counsel, which the defendant expressed later at a posttrial motion hearing, a denial of the request to remove counsel would have been warranted.[12] However, an implied waiver of counsel is not the automatic consequence of a defendant's insistence on the discharge of counsel. Since the defendant was not given the choice of continuing with his counsel or representing himself after the judge was satisfied that the defendant knew of the consequences and risks of self-representation, an implied waiver of counsel by abandonment has not been shown, and reversal is required.[13]

*Judgment reversed.*

*Verdict set aside.*

---

[12]We also recognize that while "the defendant must be permitted to present the reasons for his dissatisfaction with his attorney, . . . the judge retains considerable power to discourage last-minute tactics which appear likely to delay the commencement of trial. *Commonwealth* v. *Jackson*, 376 Mass. [at 796] (noting the 'broad discretionary power of a court over requests for last-minute shifts in representation which threaten to delay a proceeding')." *Commonwealth* v. *Tuitt*, 393 Mass. 801, 804 (1985).

[13]Contrary to traditional concepts of a "standby counsel," here standby

Commonwealth *v.* Clemens.

APPENDIX.

Outside the presence of the jury, following empanelment, the following exchange took place between the judge and the defendant:

THE COURT: "Alright, Mr. Clemens, he's been sworn?"

CLERK: "He was sworn as a witness."

THE COURT: "Okay. You don't want Mr. Greenspan to represent you?"

DEFENDANT: "That's correct."

THE COURT: "Okay. Are you making this decision from an informed capacity, you want to represent yourself?"

DEFENDANT: "Well that's actually two questions."

THE COURT: "Well bear with me. I'll make — I'll ask the questions one at a time then since that was two questions according to you.

"The first question is do you want to represent yourself if you're going to — you want me to discharge — are you appointed?"

ATTORNEY GREENSPAN: "Yes, your Honor."

THE COURT: "Alright, so do you want me to strike Mr. Greenspan's appointment and you want to represent yourself, is that what you're telling me?"

DEFENDANT: "No. I, first of all I — I would make a decision that I wanted to withdraw Mr. Greenspan —"

THE COURT: "Do you want me to dis —"

DEFENDANT: "However, that's not to imply that I want to represent myself. I wish to seek other counsel."

THE COURT: "Okay. Your motion is denied. Do you want Mr. Greenspan to represent you here today?"

DEFENDANT: "No, I do not."

THE COURT: "Alright. Mr. Greenspan, what I'm going to do is I'm going to consider you discharged by the Defendant. The Defendant has been advised that if he takes this posture, that he will be representing himself; however, out of an excess of caution, I am not going to force you on Mr. Clemens because I can't do that. But I am going to ask you to please stay, not at counsel table, but in the first row, within the bar

counsel's use was permitted in any manner the defendant chose. Standby counsel was thus allowed wide latitude and spoke occasionally during the trial, such as by making evidentiary objections and arguing for a required finding of not guilty. The defendant conducted all examinations of witnesses and gave a closing statement. The hybrid role permitted for standby counsel cannot serve to overcome the inadequate basis for an implied waiver of counsel under these circumstances, as standby counsel is not the equivalent of representation and his presence cannot render harmless that which is considered harmful error. See *Commonwealth* v. *Leonardi*, 76 Mass. App. Ct. 271, 275-276 (2010).

enclosure, and I'm going to ask you to make yourself available to Mr. Clemens in case he changes his mind or in case he decides that he wants you to do either an opening or a cross-examination on his behalf. And I know that you will comply with my request, so I'm going to consider you as standby counsel and it's up to Mr. Clemens whatever he wants you to do. If he wants you to give an opening you can. If he wants you to cross-examine the witnesses, you can. If he wants to do that all on his own, that's absolutely his right.

"May we get a waiver of counsel, please?"

ATTORNEY GREENSPAN: "I think the real issue, Your Honor, in standby counsel is — advising Mr. Clemens on issues of law."

THE COURT: "Uh-huh."

ATTORNEY GREENSPAN: "And making a motion for required finding."

THE COURT: "You may take whatever — whatever act. You are considered standby counsel here. Whatever you want to do regarding this trial in addressing me, I'm going to allow you to do it. Alright, do we have the waiver completed?"

DEFENDANT: "May I have permission to speak?"

THE COURT: "Go ahead."

DEFENDANT: "I just noted that I did indicate earlier on jury proceedings, I wished, I asked for permission to speak."

THE COURT: "Go ahead, what do you want to say?"

DEFENDANT: "Well at that time that was before the jury was impaneled. However I would have spoken on the issues that were developing at that time, that which clerk then began impaneling of the jury."

THE COURT: "Okay. Well the jury's impaneled, they're in the box. Bring the jury over please."

After the judge gave opening instructions to the jury, the following exchanges occurred at sidebar, again outside the presence of the jury:

ATTORNEY GREENSPAN: "There was one matter Mr. Clemens was to bring to the attention of the Court. Also I don't know what the Court's policy is because it's been 20 years since I've been standby counsel."

THE COURT: "Uh-huh."

ATTORNEY GREENSPAN: "On explaining to the jury that the Defendant isn't —"

THE COURT: "No need to explain anything to them."

ATTORNEY GREENSPAN: "No. Okay."

THE COURT: "No, we'll just let it play out. Anything else?"

ATTORNEY GREENSPAN: "Mr. Clemens."

DEFENDANT: "I didn't want any misinterpretation of what was said prior to them coming in but withdraw of counsel, did immediately imply that I wanted to represent myself."

THE COURT: "You were given a court appointed lawyer. You told me you don't want the court appointed lawyer. So I told you that, that means if you don't want him to represent you is that you're going to represent yourself, it's as simple as that. So what do you not understand?"

DEFENDANT: "Well there's, there's the option of other counsel."

THE COURT: "Denied."

DEFENDANT: "To seek — these words were never mentioned. Pretrial motion we're in grave dispute about that."

THE COURT: "Alright, anything else?"

DEFENDANT: "We are in great dispute about what pretrial motion that should have been done or what should be done."

THE COURT: "We have a jury in the box, Gentlemen. I want to proceed with this trial."

DEFENDANT: "I would have made that thought earlier when I asked permission to speak, Your Honor."

THE COURT: "Anything else?"

DEFENDANT: "No, Your Honor."

THE COURT: "Alright. I made arrangements. Mr. Greenspan is going to sit right next to you as close as he possibly can. And if you need to seek his learned counsel, you may do so. If you don't want to have him, I'm not forcing him on you, you may do whatever you want to do."