## COMMONWEALTH *vs.* MICHAEL JOHNSON.

No. 10-P-735.

Suffolk. April 11, 2011. - September 28, 2011.

Present: KANTROWITZ, RUBIN, & CARHART, JJ.

*Constitutional Law,* Assistance of counsel, Waiver of constitutional rights. *Due Process of Law,* Assistance of counsel, Competency to stand trial. *Practice, Criminal,* New trial, Assistance of counsel, Self-representation, Waiver, Defendant's competency.

A Superior Court judge erred in denying the criminal defendant's motion for a new trial, where the deprivation of the defendant's constitutional right to the assistance of counsel during pretrial proceedings (including a suppression hearing) constituted structural error, in that no waiver of counsel colloquy was conducted until the second day of trial. [509-511] KANTROWITZ, J., dissenting.

In conducting, on the second day of a criminal trial, a colloquy regarding the defendant's waiver of his right to counsel, a Superior Court judge erred in failing to conduct an extensive colloquy relative to the defendant's current or past mental health and, implicitly, whether his participation in the colloquy was intelligent and voluntary, given that the defendant had a long history of psychiatric issues. [511-514] KANTROWITZ, J., dissenting.

INDICTMENTS found and returned in the Superior Court Department on August 13, 1999.

After review by this court, 70 Mass. App. Ct. 1107 (2007), a revised motion for a new trial, filed on June 30, 2008, was heard by *Frances A. McIntyre,* J.

*Cynthia Vincent Thomas* for the defendant.

*David D. McGowan,* Assistant District Attorney, for the Commonwealth.

CARHART, J. The defendant appeals from the denial of his revised motion for a new trial.[1] At trial, and for a sixteen-month

---

[1] The defendant was convicted of two counts of burglary and assaulting a lawful occupant, two counts of unarmed robbery, one count of assault and battery by means of a dangerous weapon, one count of assault and battery on a

period before trial, the defendant represented himself. On appeal, the defendant argues that he was deprived of his constitutional[2] right to the assistance of counsel during the pretrial proceedings because no waiver of counsel colloquy was conducted until the second day of trial, some sixteen months after his motion to dismiss counsel was allowed. See G. L. c. 211D, § 5; S.J.C. Rule 3:10(3), as amended, 416 Mass. 1309 (1993). See also *Commonwealth* v. *Mullen*, 72 Mass. App. Ct. 136, 141-142 (2008). He also argues that his waiver of counsel at trial was constitutionally ineffective because the colloquy failed to address the issue of his competency.[3] We reverse.

*Background.* The Commonwealth presented evidence establishing that the defendant broke into the home of two elderly women on July 28, 1999. After striking both women, the defendant stole some jewelry and fled. The police, who were immediately summoned, apprehended the defendant near the victims' home. The defendant had the stolen jewelry in his possession. Blood stains found on the defendant's shirt and shoes were analyzed and found to be consistent with the deoxyribonucleic acid (DNA) profile of one of the victims.

This case has a lengthy procedural history. On August 17, 1999, the defendant was arraigned and counsel was appointed for him. On February 1, 2000, the defendant filed a pro se motion to dismiss counsel. On June 11, 2001, the defendant filed a pro se motion to waive counsel. During the pendency of the case the defendant had several admissions to Bridgewater State Hospital (Bridgewater) for mental health evaluations pursuant to G. L. c. 123, §§ 15(*b*) and 18(*a*). On December 19 and 20, 2001, a competency hearing was held, and the defendant was found to be competent. Nineteen days later, on January 8, 2002, a hearing was held on the defendant's motions to dismiss and to

---

person sixty years of age or older causing bodily injury, and two counts of assault and battery.

We previously affirmed the defendant's convictions on direct appeal, *Commonwealth* v. *Johnson*, 70 Mass. App. Ct. 1107 (2007), and the denial of various posttrial motions. *Commonwealth* v. *Johnson*, 76 Mass. App. Ct. 1134 (2010).

[2]The defendant's claims of error rest on the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.

[3]Given our disposition on the defendant's competency claim, we do not address his additional claim that his trial waiver was not knowing or voluntary.

waive counsel. A Superior Court judge allowed the defendant's motion to dismiss counsel and appointed new counsel. The judge declined to rule on the defendant's motion to waive counsel; the judge requested that the defendant decide whether he wanted to be represented by counsel or proceed pro se with standby counsel.

The defendant was next before the court on May 1, 2002.[4] At that time, he informed the judge that he was representing himself and that his attorney was serving as standby counsel. On July 10, 2002, when the defendant and standby counsel were in court for a hearing in connection with the Commonwealth's motion for a blood sample, the defendant requested that standby counsel be dismissed. The judge indicated that he would allow standby counsel to withdraw and the defendant to represent himself, and he requested that standby counsel file the appropriate documents for endorsement. The defendant was returned to court and represented himself on August 22, 2002; October 3, 2002; October 16, 2002; and December 9, 2002. There was no waiver of counsel colloquy at any of these hearings.[5]

The defendant was discharged from Bridgewater on December 9, 2002, where he had been admitted for a psychiatric evaluation pursuant to G. L. c. 123, § 18(a). This admission was the defendant's twelfth admission to Bridgewater. Upon his discharge, the defendant was prescribed Zyprexa and Depakene.[6]

---

[4]Although there is a discrepancy between the "Calendar Events" entries and the "Full Docket Entries," there is no dispute as to the chronology of court appearances by the defendant, as detailed in the Commonwealth's motion to include the transcripts of the proceedings on August 22, 2002; October 3, 2002; October 16, 2002; and December 9, 2002.

[5]At each of the hearings, the defendant confirmed that he wished to represent himself. Indeed, on August 22, 2002, in response to an inquiry by a judge, the defendant implied that a colloquy had occurred.

THE JUDGE:     "But when Judge Walker allowed [counsel] to withdraw, I assume he had a conversation with you about whether you are doing it knowingly and intelligently and so forth?"

THE DEFENDANT:  "Yes. Your Honor, I asked [counsel] to withdraw . . . ."

[6]Although the record does not disclose the purpose of the medications, when considered in the context of the defendant's discharge diagnosis, it is clear that they were prescribed for mental health issues.

On January 27, 2003, the defendant represented himself at a hearing on a motion to suppress.[7] The motion was denied. On March 28, 2003, the defendant filed a motion for funds for a DNA expert. That motion was denied without a hearing and without prejudice.

The defendant's trial began on May 15, 2003. Before the jury was selected, the trial judge realized that no waiver of counsel form had been signed and that there had been no colloquy with the defendant confirming that his waiver of counsel was knowing and intelligent. The trial judge then conducted an unsworn waiver of counsel colloquy with the defendant. The next day, the trial judge conducted a formal, sworn waiver of counsel colloquy with the defendant. The trial proceeded and the defendant was convicted on all counts.[8]

The defendant appealed from his convictions and then subsequently filed a motion for a new trial. The defendant's motion for a new trial was delayed for various reasons.[9] The direct appeal was decided by this court on October 26, 2007; the defendant's convictions were affirmed.[10] *Commonwealth* v. *Johnson,* 70 Mass. App. Ct. 1107 (2007).

After a status hearing in the Superior Court, counsel for the defendant filed a revised motion for a new trial, which, in es-

---

[7]At the hearing, the motion judge, after denying the defendant's motion, asked the defendant why he did not want a lawyer. Our review of the transcript makes clear that the defendant's response was rambling and nonresponsive.

[8]On the two counts charging the defendant with unarmed robbery and the two counts charging him with burglary and assaulting a lawful occupant, the defendant was sentenced to concurrent terms of thirty-three to forty years in State prison. On the count charging him with assault and battery by means of a dangerous weapon and the count charging him with assault and battery on a person sixty years of age or older, the defendant was placed on probation for a period of five years, such sentence to begin from and after the committed sentences. The two counts charging the defendant with assault and battery were placed on file.

[9]At oral argument, counsel for the defendant represented that one of the reasons for the delay was the defendant's mental health issues. On October 30, 2006, in a status report to this court, appellate counsel indicated that she had recently been authorized funds by the trial court in order to pursue an independent psychological evaluation of the defendant.

[10]The direct appeal was filed and argued by counsel. The only issues raised in the direct appeal were the denial of the motion to suppress identification, the denial of the motion to suppress evidence, and the Commonwealth's use of a 911 tape during closing argument.

sence, argued that the defendant was deprived of his constitutional right to counsel because he had not waived that right when he represented himself during critical pretrial proceedings and because his waiver of counsel at trial was ineffective. The judge denied the defendant's motion on June 29, 2009.[11] She concluded that the lack of a formal waiver of counsel colloquy until the second day of trial was harmless beyond a reasonable doubt because the orders denying the defendant's suppression motions had been upheld on direct appeal and the evidence of the defendant's guilt was overwhelming. She also concluded that because the defendant had been found competent seventeen months before trial and there was no subsequent evidence calling this determination into question, the defendant's waiver of counsel was effective. The defendant brings the instant appeal from the order denying his new trial motion.

*Discussion.* 1. *Pretrial denial of right to counsel.* The right to counsel is a fundamental constitutional right. *Commonwealth* v. *Means,* 454 Mass. 81, 88 (2009). The role of defense counsel is a key component of our criminal justice system, as it provides the accused with an advocate skilled in the process and trained to counter the power of the prosecution. See *Godinez* v. *Moran,* 509 U.S. 389, 400 (1993) (noting defendants usually do better with guidance of counsel). The assistance of counsel provides criminal defendants with innumerable benefits, including pretrial preparation and investigation, that are essential to effective representation.[12] See *Commonwealth* v. *Haggerty,* 400 Mass. 437, 442 (1987).

The assistance of counsel is so important to our system of justice that it cannot be waived unless a judge is satisfied that the waiver was entered knowingly and voluntarily. See *Means, supra* at 89. See also *Godinez, supra.* The judge must ensure

---

[11]The judge who decided the revised motion for a new trial was not the trial judge.

[12]Not the least of the benefits provided by the assistance of counsel is the ability to communicate with the prosecutor to ascertain whether the case might be resolved short of trial. It is clear that no effective communication between the defendant and the prosecution took place in this case. Here, on the first day of trial, before jury selection, the defendant asked the judge for a lobby conference to "see if I can resolve the case." The trial judge, quite appropriately, denied the request and indicated that any discussion would be held in open court. There was no discussion thereafter about resolving the case.

that the defendant understands the magnitude of the undertaking and the disadvantages of self-representation, and that the defendant has an appreciation of the seriousness of the charges and penalties. *Means, supra* at 89-90. It is precisely for this reason that various procedural protocols have been established. The judge must meaningfully inquire of the defendant to ensure that the waiver of counsel was made knowingly and voluntarily, and the defendant must execute a written waiver of his right to counsel. *Commonwealth* v. *Clemens*, 77 Mass. App. Ct. 232, 240 (2010).

In this case, there was no formal waiver until the second day of trial. By this time, the defendant had filed several motions and represented himself at a number of pretrial hearings.[13] Although the case had been before several judges, it was the trial judge who realized, on the first day of the trial, that a written waiver of counsel had not been executed, nor had a formal waiver colloquy taken place. The trial judge engaged the defendant in an unsworn colloquy on the first day of trial and in a formal, sworn colloquy the next day. Although the trial judge attempted to make the best of a most difficult situation, we conclude that a formal waiver, at this point in the proceedings, came far too late to be effective.

We disagree with the motion judge's analysis in her decision on the motion for a new trial. At the outset, we observe that the fact that this court upheld the trial court rulings on the motions to suppress, or that the evidence against the defendant was overwhelming, has no bearing on the issue before us. Here, the defendant did not waive the right to counsel before he represented himself during a number of pretrial proceedings, including a suppression hearing.

"Under the Sixth Amendment to the United States Constitution and art. 12 [of the Massachusetts Declaration of Rights], the defendant has a right to counsel at every 'critical stage' of the criminal process." *Commonwealth* v. *Woods*, 427 Mass. 169, 174 (1998), and cases cited. See *Lavallee* v. *Justices in the Hampden Superior Ct.*, 442 Mass. 228, 235 (2004) ("The right

---

[13]It is apparent that the defendant's pro se motion for funds for a DNA expert was filed far too late. Competent counsel certainly would have filed a similar motion much earlier, as the DNA evidence was a very important part of the Commonwealth's case.

to counsel . . . includes assistance in making decisions about specific defenses and trial strategies, which may rise to the level of [a] 'critical stage' of the process"). A suppression hearing is a critical stage. See *Commonwealth* v. *Rabb*, 70 Mass. App. Ct. 194, 198 (2007). As the defendant did not waive the right to counsel before representing himself during critical stages of the pretrial proceedings, which included a suppression hearing, there was constitutional error. See *Clemens, supra* at 233.

Although most constitutional errors are subject to harmless error analysis, the instant error is not. The deprivation of the right to counsel during a critical stage of the criminal process is structural error; it is an error "that so infringes on a defendant's right to the basic components of a fair trial that it can never be considered harmless." *Commonwealth* v. *Godwin*, 60 Mass. App. Ct. 605, 609 (2004), quoting from *Commonwealth* v. *Villanueva*, 47 Mass. App. Ct. 905, 906 (1999). See *Commonwealth* v. *Petetabella*, 459 Mass. 177, 183 (2011). As a result, the motion judge's application of harmless error analysis, in which the weight of the evidence may be considered, was inappropriate. See *Godwin, supra.* See also *Commonwealth* v. *Dagraca*, 447 Mass. 546, 553 (2006) (identifying weight of evidence of guilt as factor that may be considered in harmless error analysis). Similarly, the dissent's focus on the severity of the offenses of which the defendant was convicted, and the overwhelming evidence of the defendant's guilt, is misplaced. While there is no question that the crimes were reprehensible, the severity of the underlying offenses or the defendant's apparent guilt can have no bearing on whether the defendant's right to counsel was compromised.

In this case, a formal waiver colloquy should have been conducted and a written waiver of counsel obtained as soon as the defendant expressed his desire to represent himself, or shortly thereafter. See generally Smith, Criminal Practice and Procedure §§ 19.37, 19.40 (3d ed. 2007). As there was no such waiver and the defendant represented himself during critical pretrial proceedings, that error was structural.

2. *Competency.* Where there is a bona fide doubt as to the defendant's competency to waive counsel as a result of a history of mental illness, the judge should conduct a separate inquiry on

that issue. "The scope of the inquiry . . . [is to be] determined by the circumstances at hand." *Means*, 454 Mass. at 96. "This protecting duty imposes [a] serious and weighty responsibility upon the trial judge." See *Westbrook* v. *Arizona*, 384 U.S. 150, 150 (1966), quoting from *Johnson* v. *Zerbst*, 304 U.S. 458, 465 (1938). See Smith, *supra* at § 19.40.

In the instant case, both the sworn and unsworn colloquy consisted of questions designed to apprise the defendant of the difficulties inherent in self-representation and the possible penalties for the offenses.[14] No inquiry, however, was made as to the defendant's current or past mental health and, implicitly, whether his participation in the colloquies was intelligent and voluntary. Based upon the defendant's numerous admissions to Bridgewater; the fact that he had been prescribed medication upon his discharge from Bridgewater about six months prior to trial; the fact that the competency hearing had occurred a little over sixteen months prior to trial; and the fact that despite his unwavering desire to represent himself, when the defendant was finally addressed on this issue, some of his answers were equivocal,[15] a bona fide issue as to his competency to waive counsel existed. An extensive colloquy relative to the defendant's mental health status should have taken place. Because no such colloquy took place, we are left with serious doubt whether the defendant was competent to waive counsel.[16] See *Commonwealth* v. *A.B.*, 72 Mass. App. Ct. 10, 16 (2008), quoting from *Commonwealth* v.

---

[14]While precedent supports the dissent's suggested equivalency between competency to stand trial and competency to waive the right to counsel, see *Godinez*, 509 U.S. at 399-400 ("[T]here is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning than the decision to waive other constitutional rights"), the issue here is whether — given the defendant's psychiatric history and the more than sixteen-month gap between the competency hearing and the trial — the judge should have conducted a colloquy to assess the defendant's current competency.

[15]On more than one occasion, both at the unsworn colloquy and the sworn colloquy, when asked why he wanted to waive counsel, the defendant replied that he felt that he had no choice.

[16]The dissent cites to several entries on the defendant's psychiatric evaluations, arguing that the defendant was malingering. Without responding to certain psychiatric entries, suffice it to say that the voluminous psychiatric reports show a disagreement among the treating psychiatrists and psychologists as to the defendant's mental health. Indeed, as has been noted, the defendant's last discharge order before trial included medications to treat

*Companonio*, 445 Mass. 39, 48 (2005) ("The inquiry [by the appellate court] 'is not . . . why the court failed to hold [a competency hearing] on its own initiative, but whether . . . there were elements of such indication in the situation as, if proper notice had been taken of them, could present a substantial question of possible doubt as to [the defendant's] competency to stand trial' ").

While we agree with the dissent's reasoning that, under "normal" circumstances, if a judge is satisfied that a defendant is competent, the judge need do no more, here we are faced with a defendant who had a long history of psychiatric issues. This case did not present the trial judge with a "normal" situation. Given the serious question as to the defendant's mental health raised by the record, an inquiry into the defendant's competency at the time of trial was mandated. The failure to conduct the required colloquy was error. See *Commonwealth* v. *Simpson*, 428 Mass. 646, 649 (1999) ("If the defendant was incompetent at the time of his trial, it was a miscarriage of justice to convict him, even if there was overwhelming evidence that he had committed the crimes charged").

We recognize that the trial judge was dealing with a serious case that had lingered in the trial court for far too long. We understand the need to deal with old pending cases in a prompt manner. However, the issue of the mental health status of a defendant has the potential to present a very difficult situation to the trial judge. We start with the recognition that a judge is not a mental health expert. Every court in the Commonwealth has court forensic services available to conduct mental health evaluations. See G. L. c. 123, § 15. In this case, the judge could have had the defendant evaluated as to competency. This would have resulted in a minimal delay of the trial. At the very least, during the colloquy, the judge should have asked the defendant whether he had been taking his prescribed medications and what effect they had on him. The dissent argues that no evidence of the defendant's incompetency was raised by the defendant's standby counsel. Here, the defendant did not want

mental disorders. Further, although this is not a factor in our decision, subsequent to trial, the defendant was committed to Bridgewater on April 14, 2004, with a diagnosis of "major mental illness best described as Psychotic Disorder."

standby counsel, and indeed, standby counsel was not present at the suppression hearing or on the first day of trial, and he had had little or no contact with the defendant prior to trial. As standby counsel had so little interaction with the defendant, it is not surprising that counsel did not bring the defendant's mental health status to the judge's attention.[17]

Further, even if there was no question about the competency of the defendant, once the trial judge had completed the colloquy and the defendant had properly waived his right to counsel, the judge should have allowed the defendant time to file or refile any pretrial motions he chose and to prepare anew for trial. A defendant must properly waive his right to counsel before he may represent himself. Contrary to the suggestion of our dissenting colleague, we do not think that the defendant's pro se, pretrial motion to waive counsel, combined with the defendant's prior experience with the legal system, as presented in the instant circumstances, constitutes a constitutionally effective waiver of counsel. Just as structural error requires a new trial for a convicted defendant even when the likelihood of a different outcome is low, the failure of the court to engage in a proper colloquy at the outset means that the defendant was entitled, after properly waiving his right to counsel, to engage in whatever appropriate pretrial proceedings he chose, even though the likelihood of a different outcome might have been low.

*Conclusion.* "The decision to allow a motion for a new trial lies within the sound discretion of the judge and will not be reversed unless it is manifestly unjust or unless the trial was infected with prejudicial constitutional error."[18] *Commonwealth v. Nieves,* 429 Mass. 763, 770 (1999). As we conclude that the

---

[17] We need not reach the issue whether standby counsel had a duty to bring the defendant's mental health condition to the judge's attention in view of the defendant's hostility to standby counsel and counsel's minimal interaction with the defendant.

[18] The Commonwealth asserts that the defendant waived the instant claims because he raised them after his convictions were affirmed on direct appeal. See *Commonwealth* v. *Randolph,* 438 Mass. 290, 293-294 (2002). Although constitutional errors, including those that are structural, may be waived when they are not properly preserved, *Petetabella,* 459 Mass. at 186 n.9, even assuming that the instant errors were waived, reversal would be required, as they created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Rogers,* 459 Mass. 249, 263 (2011).

defendant's trial was infected with such error, a new trial is required.

*Order denying revised motion
for new trial reversed.*

*Judgments vacated.*

*Verdicts set aside.*

KANTROWITZ, J. (dissenting). The defendant engaged in a brutal home invasion, victimizing and viciously assaulting two women, aged seventy-seven and fifty-eight.[1] He was apprehended almost immediately after the crime, and property and a deoxyribonucleic acid (DNA) profile, consistent with one of the victims, were found on his person.

*Competency.* Prior to trial, the defendant had three competency evaluations and one hearing and was repeatedly found competent;[2] at the beginning of the trial, the judge again assessed the defendant's competency in a colloquy to waive counsel; during the four-day jury trial, the defendant represented himself and presented not a scintilla of behavior indicative of any competency

---

[1]As the judge observed at sentencing, "[When the defendant] was confronted he had an opportunity to leave, if he were merely there to steal items. He was confronted by [the first victim]. Instead of leaving he chose to beat her, and then he went upstairs to beat [the second victim]. And then because [the first victim] had the temerity to untie herself, to slip her bonds and to call for help, he administered another beating to her."

[2]After a competency hearing on December 20, 2001, the defendant was found competent to stand trial. A competency report, issued earlier that year, noted that the defendant "is aware and understands the gravity of the charges, and the potential outcome for him by standing trial, with or without an attorney to represent him," and that the defendant "adequately possesses the ability to consult with an attorney, even if [he] has chosen not to, and he has a rational as well as factual understanding of the proceedings against him." A common theme throughout the reports on the defendant's examinations is the degree to which he was malingering. A May 17, 2000, report reads in part, "Again, the degree to which [the defendant] may be exaggerating or malingering his symptoms is open to question." A January 16, 2001, report reads, "There are a number of factors that lead me to a conclusion that significant aspects of [the defendant's] presentation are malingered, and as a result, I have serious doubts of his appearance of incompetence." Additionally, a G. L. c. 123, § 18(a), evaluation, dated December 6, 2002, noted that the defendant "seems to be strongly invested in obstructing the criminal prosecution process . . . ."

problems;[3] and, lastly, at no point did standby counsel ever alert the judge to any competency concerns. See *Commonwealth* v. *Barnes*, 399 Mass. 385, 390 (1987). Against this avalanche of evidence, the majority has a "serious doubt whether the defendant was competent to waive counsel."

I start with the observation that there does not seem to be any significant difference between competency to stand trial and competency to waive counsel. See *Godinez* v. *Moran*, 509 U.S. 389, 396-402 (1993); *Barnes, supra.* Further, in any competency determination, the trial court judge is in a far superior position than we are to assess the issue. As such, cases on the former are instructive here. "[I]n reviewing the judge's determination of competency, we must give weight to the judge's opportunity to observe the defendant's demeanor during the trial and the plea hearing." *Commonwealth* v. *Russin*, 420 Mass. 309, 317 (1995). "The narrow issue is whether at any time prior to the return of the guilty verdict there was 'a substantial question of possible doubt' about the defendant's competency to stand trial." *Commonwealth* v. *Hall*, 15 Mass. App. Ct. 1, 2 (1982), quoting from *Commonwealth* v. *Hill*, 375 Mass. 50, 62 (1978).

To his credit, the trial judge realized that there had not been a formal colloquy with the defendant concerning his waiver of counsel. The judge, at that point, conducted a colloquy, was satisfied with the responses, and proceeded with the trial. No more was required. Competency to waive counsel was thus established, and there is no basis to overturn that determination.

*Waiver of counsel.* Concomitant with the right to counsel is the right to proceed pro se. *Commonwealth* v. *Means*, 454 Mass. 81, 89 (2009). At all relevant times before trial, the defendant indicated, both in writing[4] and on the record (and apparently even to those examining him at Bridgewater State Hospital), that he wished to waive counsel.[5] In addition, at a hearing on

---

[3]The defendant also displayed no behavior indicative of competency problems during the hearing on his suppression motion. Although the defendant did not present a clear and cogent legal argument, his "technical legal knowledge is not relevant to the determination whether he is competent to waive his right to counsel." *Godinez* v. *Moran*, 509 U.S. 389, 400 (1993) (quotations and citation omitted).

[4]As for the majority's concern of a written waiver, the defendant filed a written motion to waive counsel.

[5]On January 8, 2002, the defendant explained that he wanted to dismiss

May 1, 2002, the judge asked the defendant, "You're representing yourself, right?" to which the defendant, with standby counsel present, responded, "Yes."[6] In addition, well before the defendant represented himself at the pretrial proceedings, the defendant had filed a written motion to waive counsel. That written motion, combined with the defendant's unequivocal request to proceed pro se and his nearly lifelong involvement with the criminal justice system,[7] constituted an effective waiver of counsel. See *Commonwealth* v. *Clemens*, 77 Mass. App. Ct. 232, 240 (2010) (identifying requirements for effective waiver). See also *Commonwealth* v. *Moran*, 17 Mass. App. Ct. 200, 208 (1983) (prior experience with legal system indicates waiver is knowing and intelligent).

In addition, on May 16, 2003, following jury selection, the trial judge realized that a full and formal colloquy had not been conducted regarding the defendant's waiver of counsel. The judge then conducted the colloquy. Throughout it, the defendant was coherent and clear as to his intentions and motives. The defendant consistently maintained that he did not wish to be represented by counsel, and he indicated that he understood the charges against him, the seriousness of those offenses, the possible penalties (including a life sentence), and the difficulties of self-representation. See *Means*, 454 Mass. at 89-90. As the

counsel because he felt that his attorney "was deceiving [him]." The defendant also requested that standby counsel be assigned. At that time, the judge dismissed appointed counsel and appointed new counsel, with instructions to the defendant to "confer with new counsel and then you can decide whether you want standby counsel. . . . So we'll appoint new counsel and bring you back . . . ." This passage of time gave counsel and the defendant time to evaluate the defendant's position.

[6] On July 10, 2002, the defendant moved to dismiss his standby counsel. Though the briefs indicate that no colloquy was conducted at this juncture, there was a conversation between the judge and the defendant about the waiver of counsel. The defendant made it clear that he was unhappy with his standby counsel, and while the judge did not validate the defendant's complaints, he did respond to the defendant's concerns and requests by allowing standby counsel to withdraw. It appears from the docket that standby counsel was reappointed at trial.

[7] At thirteen, the defendant was found delinquent of armed robbery. In 1991, he was sentenced to twelve to fifteen years at the Massachusetts Correctional Institute at Cedar Junction, apparently for burglary. He had been on parole for two months when he committed the crimes at issue.

record indicates that the defendant acted knowingly, intelligently, and voluntarily, the waiver was effective. See *Clemens, supra.*

*Conclusion.* In the instant circumstances, there was nothing more the trial judge could have done. The judge found the defendant competent. At that point, he could not order another motion to suppress, this time with counsel, as the defendant wished to proceed pro se. For the same reason, the judge could not appoint counsel to negotiate a possible plea with the prosecutor. Nor was the judge required to engage in "[a]n extensive colloquy relative to the defendant's mental health status" because he obviously was clearly satisfied that the defendant was competent. It was abundantly clear that the defendant wished to proceed pro se. It was his stance throughout. The judge established that with his colloquy.

As the record indicates that the defendant was competent to stand trial, waive counsel, and proceed pro se, and that the defendant effectively waived his right to counsel before he began to represent himself at both the pretrial proceedings and the trial, I respectfully dissent.