COMMONWEALTH vs. DANIEL F. MORAN.

Middlesex.    September 15, 1982. — April 8, 1983.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Criminal,* Assistance of counsel. *Constitutional Law,* Assistance
    of counsel.

Before ruling on a criminal defendant's request for change of appointed
    counsel, a judge must permit the defendant to state his reasons for
    wanting to discharge his attorney. [659]
The defendant in a murder case was not prejudiced by the judge's denial
    of his request for a change of counsel, made on the day trial was
    scheduled to begin, without permitting the defendant to state his
    reasons for the request, where it appeared following a posttrial hear-
    ing that the defendant's sole dissatisfaction with appointed counsel was
    his inability to consult with counsel at will, and that this was the result
    of his incarceration awaiting trial. [656-660]
The defendant in a murder case was not denied effective assistance of
    counsel by his attorney's failure to impeach the key witness for the
    prosecution by introducing in evidence the witness's conviction of
    possession of a controlled substance, for which he was given a six-
    month suspended sentence and placed on probation, and the witness's
    two convictions on charges arising from setting up a lottery, which
    were placed on file. [660-662]

INDICTMENTS found and returned in the Superior Court
Department on February 1, 1980.

The cases were tried before *Donohue,* J.

*Marshall D. Stein* for the defendant.

*Robert M. Raciti,* Assistant District Attorney, for the
Commonwealth.

NOLAN, J.   The two issues in this case are:  (1) the extent
to which a trial judge is required to conduct an inquiry as to
reasons a defendant requests a change of trial counsel when
such a request is voiced on the eve of trial, and (2) whether
the defendant's trial counsel was ineffective.  We conclude

that a judge should permit a defendant to give his reasons for a change in counsel and that trial counsel's assistance was not ineffective. We affirm the defendant's convictions of murder in the first degree and assault and battery by means of a dangerous weapon.[1]

Briefly, the facts are as follows. The victim, Salvatore Sperlinga, was seated at a table in a social club in Somerville on the morning of January 4, 1980. The defendant came in the front door, asked for the victim, espied him, and pulled the trigger of a .32 caliber automatic pistol. The gun, however, misfired, and the victim ran toward a back room. Before he reached that destination he was struck by one bullet in the buttocks. Entering the back room, in which he would find no refuge, he tried to defend himself with a piece of wood. The defendant entered the room and fired three times, striking the victim twice and sending the victim to the floor. The defendant then walked up to the victim, who uttered a cri de coeur ("No, don't"), and at point blank range fired a bullet into the victim's head. A jury convicted the defendant of murder in the first degree and of assault and battery by means of a dangerous weapon. On the murder conviction, the judge sentenced the defendant to a life term at the Massachusetts Correctional Institution at Walpole; on the second conviction, the judge imposed a concurrent sentence of five to ten years.

1. *Denial of the defendant's request for new counsel.* The defendant argues that, in cases where an indigent defendant requests a change of appointed counsel, the trial judge is required to make a searching inquiry as to the defendant's reasons for desiring the change.

The procedural scenario is as follows. On February 1, 1980, the defendant was indicted for the murder of Salvatore Sperlinga. Upon motion by the defendant, Mr. Frank Mar-

---

[1] The defendant was also convicted of possession of a firearm without a firearm identification card, but the indictment was placed on file with the defendant's consent. Therefore, the propriety of this conviction is not an issue before us. *Commonwealth* v. *Tavares,* 385 Mass. 140, 141 n.1 (1982).

ciello was appointed defense counsel as of February 11, 1980.[2] At a pretrial conference in April of 1980 Mr. Marciello represented the defendant. During the period from February, 1980, to October 6, 1980, the defendant did not indicate that he was less than pleased with his appointed counsel.

However, on October 7, 1980, the day the trial was scheduled to begin,[3] the defendant informed the judge through counsel that he wished to address the judge regarding representation of counsel. The following colloquy took place: THE JUDGE: "Well, I am not really concerned about Mr. Moran [the defendant] at this time, because, quite clearly, he is not going to be afforded the opportunity to change counsel. If that is what he is looking for, the answer is: n-o, no." THE DEFENDANT: "I fired him." THE JUDGE: "You didn't fire anybody, sir. All right?" THE DEFENDANT: "I did." THE JUDGE: "You did? You didn't fire him through me, sir. So let there be no misunderstanding. You are going to trial. He is your counsel, and that is it." THE DEFENDANT: "He is not." THE JUDGE: "He is not? Mr. Moran, he is going — this case, if the Commonwealth were ready to start today, this case would start, and he would be your counsel, like it or not."

The judge, after disposing of some preliminary matters and empanelling the jury, ordered that the testimony commence the following morning. The first witness was examined and cross-examined. There was no complaint from the defendant. However, after a morning recess the following colloquy took place: THE JUDGE: "All right. There was an indication that you wanted to say something to me. What is it that you want to call to my attention?" THE DE-

---

[2] Mr. Marciello had also represented the defendant at the latter's probable cause hearing in a District Court.

[3] The assistant district attorney planned to request a continuance due to the unavailability of the pathologist who had performed the autopsy. However, the need for a continuance was obviated when the parties agreed that the autopsy report would be admitted in evidence in lieu of the pathologist's testimony.

FENDANT: "Your Honor, I don't want this man to represent me. I didn't have the opportunity last night to call out. I was refused a telephone call. I am living under real tough circumstances — security. I didn't get opportunity to contact the outside, and this is why this is at this situation now. I am very dissatisfied. I have my family who I could notify and could make a difference in my trial and I intend to do this." THE JUDGE: "I think I indicated to you yesterday, sir, that I was not going to — I think you indicated yesterday that you had fired your lawyer, and I indicated: no, you had not fired your lawyer. And I am not going to discharge Mr. Marciello. So we are just going to proceed with the trial. And you have called it to my attention that you are dissatisfied with him, and that is on the record. But we are going to proceed with the trial. Okay. Send for the jury." Thereafter, the trial continued and the defendant never again mentioned any dissatisfaction with trial counsel.

After argument in this court, we remanded the case to the trial judge by an order which directed him to conduct an evidentiary hearing to determine: (1) the reason or reasons the defendant wanted to discharge his counsel and an evaluation of the validity of those reasons; and, (2) what criminal record of conviction of the witness Robert J. D'Onofrio, if any, could have been introduced to impeach him.[4]

Pursuant to our order, the trial judge, who was authorized to grant a new trial if the ends of justice required it, conducted a hearing at which the defendant and his trial counsel testified. The judge found that there had been no conflict between counsel and the defendant. The defendant's sole dissatisfaction was his inability to consult ad libitum with his trial counsel. He acknowledged that this freedom was impossible because of his confinement awaiting trial. His trial counsel conferred with him on many occasions at the house of correction in Billerica and at the Massachusetts Correctional Institution at Norfolk, where he

---

[4] See *infra* at 661.

was later confined. His lawyer urged him to call him day or night, at his home or office, and furnished him his telephone numbers. The judge concluded that the only reason for the defendant's desire to discharge his lawyer was his inability to see counsel as freely as he would have if he were not in custody. The defendant complained of this same problem of communication with his appellate counsel, who represented him at the hearing on remand. The judge did not grant a new trial.

We reaffirm our holdings in prior cases that the decision to honor a defendant's request for change of appointed counsel is a matter left to the sound discretion of the trial judge, but after he has given the defendant the opportunity to articulate his reasons. See *Lamoureux* v. *Commonwealth*, 353 Mass. 556, 560 (1968).

A defendant has no constitutional right to any particular court-appointed counsel.[5] *Commonwealth* v. *Binkiewicz*, 342 Mass. 740, 745 (1961). *Commonwealth* v. *Drolet*, 337 Mass. 396, 400 (1958). However, a judge must permit a defendant to advance his reasons for wanting to discharge his attorney. The appropriate practice, which should have been followed at the time of trial in this case, is to hear the defendant's offer of specifications so that the judge's discretion will be exercised "on an informed basis," *Lamoureux* v. *Commonwealth*, *supra*. See *United States* v. *Welty*, 674 F.2d 185, 187 (3d Cir. 1982) (Sixth Amendment requires inquiry into defendant's reasons for displeasure); *United States* v. *Young*, 482 F.2d 993, 995 (5th Cir. 1973) (Sixth Amendment violated where judge makes no inquiry into seemingly substantial complaint of communication breakdown or irreconcilable conflict); *United States* v. *Calabro*, 467 F.2d 973, 986 (2d Cir. 1972), cert. denied, 410 U.S. 926 (1973) (refusal of judge to inquire as to allegation of good

---

[5] Under the Massachusetts and United States Constitutions, a criminal defendant has the right to represent himself. Art. 12 of the Massachusetts Declaration of Rights. *Faretta* v. *California*, 422 U.S. 806, 818-832 (1975).

cause for discharge of counsel, where facts lend credence to defendant's good faith, constitutes Sixth Amendment violation); *State* v. *Renshaw*, 276 Md. 259, 270 n.6 (1975) (judge must make appropriate inquiries when defendant claims inadequate representation); *Monroe* v. *United States*, 389 A.2d 811, 820-821 (D.C.), cert. denied, 439 U.S. 1006 (1978) (at pretrial stage judge has constitutional duty to conduct an inquiry where defendant claims ineffective assistance of counsel); *People* v. *Bass*, 88 Mich. App. 793, 801-802 (1979) (trial judge erred in failing to inquire as to defendant's claimed dispute with appointed counsel).

Though we do not approve the judge's action in this case, we are unable to discern any prejudice to the defendant, because he did not have a valid reason to discharge his attorney. See *Lamoureux* v. *Commonwealth, supra* at 560-561.

2. *Ineffective assistance of counsel.* The defendant contends that he was denied his right to effective assistance of counsel due to his attorney's failure to impeach the government's principal witness on the basis of his criminal record. We hold that there was no deficiency in defense counsel's handling of the case.

In disposing of claims of ineffective assistance of counsel, we must examine the specific circumstances of the case to see whether "there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). See *Commonwealth* v. *Levia*, 385 Mass. 345, 352 (1982), and cases cited. We will not reverse on this ground unless the defendant can demonstrate "that better work might have accomplished something material for the defense." *Commonwealth* v. *Adams*, 374 Mass. 722, 727 (1978), quoting from *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). While most cases finding ineffective assistance of counsel

concern counsel's poor preparation for trial, it is possible that counsel's judgment as to tactics and strategy will be the subject of such inquiry. *Commonwealth* v. *Adams, supra* at 728. However, "we do not 'second guess competent lawyers working hard for defendants who turn on them when the jury happen to find their clients guilty.'" *Commonwealth* v. *Daigle,* 379 Mass. 541, 544 (1980), quoting from *Commonwealth* v. *Stone,* 366 Mass. 506, 517 (1974).

In this case the defendant argues that the fatal flaw in trial counsel's conduct was his failure to impeach Robert J. D'Onofrio, the key prosecution witness, on the basis of his criminal record. There were three prior convictions which might have been admissible (possession of a controlled substance, for which he was given a six-month suspended sentence and placed on probation, and two concerned with setting up a lottery, which were placed on file).[6] Counsel decided that they did not have sufficient weight for impeachment purposes. There appear to be no other records of conviction which qualified for admission. In any event, the judge ruled that the defendant was not prejudiced and that no harm accrued to him by the attorney's decision not to impeach by these convictions. There was no error in denying a new trial. In *Commonwealth* v. *Bernier,* 359 Mass. 13, 20 (1971), we held that trial counsel's failure to cross-examine the victim was perhaps poor judgment but was not a denial of effective assistance of counsel. In *Commonwealth* v. *Daigle, supra,* we held that trial counsel's failure to impeach the credibility of two accomplice witnesses by using their prior criminal records was not a denial of effective assistance of counsel. Finally, in *Commonwealth* v. *Key,* 381 Mass. 19, 31-33 (1980), we found no deprivation of effective assistance of counsel where trial counsel failed to challenge the credibility of a man whose dying declarations were the chief component of the Commonwealth's case.

---

[6] After findings of guilty in both cases, they were placed on file. As a result of this disposition, it is doubtful that they constituted convictions admissible under G. L. c. 233, § 21, to impeach the witness. *Commonwealth* v. *Devlin,* 365 Mass. 149, 163 (1974).

On the record before us we cannot say that trial counsel's failure to introduce evidence concerning the chief prosecution witness's criminal record amounted to a denial of effective assistance of counsel.

3. *Review under G. L. c. 278, § 33E.* We have reviewed the entire record pursuant to the mandate of G. L. c. 278, § 33E, and we decide that the verdict of guilty of murder in the first degree is not against the law or the weight of the evidence; accordingly, we do not disturb that verdict.

*Judgments affirmed.*