## COMMONWEALTH *vs.* JAMES COFFMAN.[1]

No. 11-P-2023.

Hampden. October 3, 2012. - July 18, 2013.

Present: GRAHAM, VUONO, & HANLON, JJ.

*Sex Offender. Sex Offender Registration and Community Notification Act. Constitutional Law,* Confrontation of witnesses. *Practice, Criminal,* Confrontation of witnesses, Assistance of counsel.

At the trial of an indictment charging the defendant with failure to register as a sex offender, in violation of G. L. c. 6, § 178H(*a*), sufficient evidence existed to permit a rational fact finder to infer that the defendant knowingly violated the statute, where the fact finder was not required to believe the defendant's claim that he had been placed in protective custody at the time he was required to register, the Commonwealth was not required to present evidence to dispute the defendant's claim, and there was other evidence sufficient to establish beyond a reasonable doubt that the defendant had knowingly provided a false address and that he had changed his address without notifying the authorities. [37-39] GRAHAM, J., dissenting.

At the trial of an indictment charging the defendant with failure to register as a sex offender, in violation of G. L. c. 6, § 178H(*a*), the admission in evidence of records maintained by the Sex Offender Registry Board and the probation department did not violate the defendant's constitutional right to confront witnesses against him, where the person who created the documents at issue testified at trial and was subject to cross-examination. [39-40]

A Superior Court judge did not abuse his discretion by denying, without inquiry, a criminal defendant's request, made on the morning of the commencement of a subsequent offender trial, to continue the case in order that the defendant might hire his own attorney. [40-41]

INDICTMENT found and returned in the Superior Court Department on July 20, 2010.

The case was heard by *Peter A. Velis,* J.

*Glynis MacVeety* for the defendant.

---

[1]The indictment named "Tony Johnson, also known as James Coffman." Tony Johnson is an acknowledged alias of James Coffman, the name under which the defendant was tried and apparently his actual name. Both names share the same Sex Offender Registry Board number.

*Deborah D. Ahlstrom,* Assistant District Attorney, for the Commonwealth.

VUONO, J. In 1991, the defendant was convicted by a jury of aggravated rape and related offenses in Superior Court. Upon his release from prison he was classified as a level three sex offender and became subject to the registration requirements of G. L. c. 6, § 178F¹/₂. On April 21, 2011, following a jury-waived trial, the defendant was found guilty of failing to register as required, in violation of G. L. c. 6, § 178H(*a*).[2] In a separate proceeding before the same judge, the defendant was convicted of being a second offender, in violation of G. L. c. 6, § 178H(*a*)(2).[3] Thereafter, in a proceeding before the same judge the defendant admitted to a violation of probation in connection with another conviction, the hearing on which had been pending.[4]

The Commonwealth's theory of guilt was that the defendant knowingly provided a false address when he registered at the Springfield police department on March 31, 2010, and that, even if the defendant had been residing at the address he provided on that date, he subsequently changed his address and knowingly failed to provide notice to the police of that change.[5]

---

[2]General Laws c. 6, § 178H(*a*), as amended through St. 2006, c. 303, §§ 4 & 5, provides in pertinent part:

"(*a*) A sex offender required to register pursuant to this chapter who knowingly: (i) fails to register; (ii) fails to verify registration information; (iii) fails to provide notice of a change of address; or (iv) who knowingly provides false information shall be punished in accordance with this section."

The indictment, tracking the pertinent language of G. L. c. 6, § 178H(*a*), reads as follows: "Tony Johnson, also known as James Coffman, also known as Anthony Johnson, also known as Anthony Ramon defendant herein, . . . on divers dates from on or about March 31, 2010 through and including on or about April 30, 2010, . . . did knowingly: (i) fail to register; (ii) fail to verify registration information; (iii) fail to provide notice of a change of address; or (iv) provided false information, in violation of [G. L. c. 6, §] 178H(*a*)(1) & (2)."

[3]The defendant had four previous convictions of failing to register as a sex offender.

[4]The violation of probation was based on the commission of the instant offense as well as violations of "additional conditions."

[5]The Commonwealth also argued at trial that the defendant violated the

At trial, the defendant admitted that he had notice of his status and his obligations under the statute, including the requirement of reporting a change in his address. He claimed, however, that he was in compliance with the statute because the Hampden County district attorney's office had placed him in protective custody out of State during the time period specified in the indictment. The defendant filed motions for a required finding of not guilty at the close of the Commonwealth's case and at the close of all the evidence, which were denied. In the motion filed at the close of all the evidence, the defendant argued, in essence, that because the Commonwealth did not rebut his testimony about being placed in protective custody, the evidence was insufficient to prove that he knowingly violated the statute.

On appeal, the defendant claims that his motions for a required finding of not guilty should have been allowed.[6] He also contends that the judge erred by (1) admitting in evidence documents maintained by the Sex Offender Registration Board (SORB) and the Superior Court probation department, and (2) failing to inquire into the reasons why the defendant wished to be represented by different counsel at the second offender trial. For the reasons that follow, we affirm the conviction.

*Background.* The evidence permitted the judge to find the following facts. While the defendant was in prison he signed an acknowledgment of his duty to register on three separate occasions.[7] Each time the defendant signed an acknowledgment form, Judit Morales, the SORB liaison at the Hampden County sheriff's department, explained the statute's requirements to him. Additionally, prior to March of 2010, during periods when the defendant was not incarcerated, he registered as a sex offender with the Holyoke and West Springfield police depart-

---

statute by knowingly failing to provide an accurate secondary address, but does not press this point on appeal.

[6]Specifically, the defendant claims that his prosecution "offends the fundamental principles of justice, fairness and due process guaranteed by the Fourteenth Amendment" because the authorities, namely the district attorney's office, not only knew where he was, but were responsible for moving him out of State. Although the defendant frames his argument as a violation of due process, we construe it as a challenge to the sufficiency of the Commonwealth's evidence.

[7]The defendant signed the forms on March 24, 2006; June 27, 2006; and April 4, 2007.

ments, and on one occasion he notified the SORB of his change of address.

By January 1, 2010, the defendant was living in Springfield. On February 12, 2010, he was placed on probation. He was supervised by probation officer Andrea Cadieux. At that time, the defendant reported that he was living at 700 State Street in apartment 315, in Springfield. The defendant later informed the probation department that he resided in apartment 215, and on a third occasion, in apartment 312. After the defendant missed a scheduled appointment with Cadieux on March 9, 2010, Cadieux attempted to contact the defendant using the addresses he had provided, but she was unsuccessful. Cadieux continued her efforts to contact the defendant during the month of April to no avail.

Meanwhile, on March 31, 2010, the defendant met with Detective Tracy Duda at the Springfield police department, where he completed a sex offender registration form.[8] Detective Duda reviewed the statute's requirements as they appear on the form and read them aloud to the defendant.[9] The completed registration form stated that the defendant was living at 619 State Street in apartment 3L in Springfield, but, as the defendant conceded at trial, he never lived at 619 State Street.[10] According to the defendant, the number "619" was written in error and he actually was living at "691" State Street in the home of Shatina Boyd. The discrepancy in the numbers is immaterial because the evidence showed that the defendant did not live at either address on March 31, 2010. Boyd testified that the defendant

---

[8]Detective Duda is assigned to the sex offender registry unit.

[9]The defendant cannot read and completed the form with Detective Duda's assistance. The defendant testified that he was a special needs student while he attended school and that he left school altogether after repeating the seventh grade.

[10]On April 26, 2010, Springfield police Detective John Aberdale conducted a routine audit of the information on the defendant's sex offender registry form and went to 619 State Street to determine if the defendant was living at that address. Detective Aberdale discovered that the nonprofit organization, Springfield Community Partnerships, was located at 619 State Street and that the defendant was not living there. Detective Aberdale then changed the defendant's status in the sex offender registry inquiry system (SORIS) by placing him "in violation," which meant that he could be arrested from that point forward.

and his girlfriend, who was a close friend of Boyd's, moved into her apartment at 691 State Street near Christmas in 2009, and stayed two or three months before leaving "around March."[11] Boyd further testified that near the end of the defendant's stay, he was not living with her all the time. Rather, he was going "back and forth." During the month of April, the defendant did not reside with Boyd, who was evicted on April 8. The defendant did not provide notice of a change of address.

The defendant testified in his own defense. He stated that he had been shot on New Year's Day and again in early April, 2010, after which he became a material witness for the Hampden County district attorney's office. That office, the defendant asserted, moved him to a motel in Connecticut at "the end of March" where he remained for "a month or a month and a half." The defendant also stated that he testified before a Hampden County grand jury, but he did not specify when that occurred. According to the defendant, he was returned to Springfield at some point in April and remained homeless until he was arrested on April 30, 2010. The defendant identified his signature on the various registration and acknowledgment forms that had been introduced in evidence and admitted that he was aware of his obligations under the statute even though he could not read the forms himself.

1. *Sufficiency of the evidence.* As noted, the defendant claims there was insufficient evidence to support his conviction. Our review of the evidence, viewed in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979), reveals a sufficient basis from which a rational finder of fact could have reasonably inferred that the defendant knowingly violated the statute.

At the outset, we observe that the judge was not required to believe the defendant's claim that he was placed in protective custody.[12] Determinations of witness credibility lie exclusively within the province of the trier of fact. *Commonwealth* v. *Ianello*,

---

[11]Although Boyd had known the defendant since childhood, she did not know his true name. At trial she referred to the defendant by his nickname "Black."

[12]The dissent has ignored this critical point and apparently accepts the defendant's testimony as truthful.

401 Mass. 197, 202 (1987). The judge, as trier of fact, was entitled to reject part or all of the defendant's testimony. See *Commonwealth* v. *Zanetti*, 454 Mass. 449, 457 (2009). In this case, it is evident that the judge disbelieved the defendant. It is not surprising that he did so. The defendant's testimony was inconsistent on a number of key points. For example, he claimed that he was living at 691 State Street on March 31, 2010, but also testified that the district attorney's office had moved him to Connecticut at the end of March. At one point the defendant testified that he was in protective custody during the month of April, but he later stated that he was put in the motel in Connecticut right after he was placed on probation, which would have been in mid-February. The defendant further testified that he was arrested at the end of March, 2010, because he "needed to register" and was brought to the Springfield police department by State troopers, one of whom he identified by name. This assertion contradicts the defendant's own chronology of events. Given the nature of the defendant's testimony coupled with the absence of any corroborating evidence, it was not unreasonable for the judge to have rejected the defendant's version of events.

We further observe that the Commonwealth was not required to present evidence to dispute the defendant's claim.[13] The state of the evidence at the close of all the evidence is reviewed only "to determine whether the Commonwealth's position as to proof deteriorated after it closed its case." *Commonwealth* v. *Morgan*, 449 Mass. 343, 349 (2007), quoting from *Commonwealth* v. *Sheline*, 391 Mass. 279, 283 (1984). See *Commonwealth* v. *Dubois*, 451 Mass. 20, 28 (2008), quoting from *Commonwealth* v. *O'Laughlin*, 446 Mass. 188, 203 (2006) ("Deterioration only occurs where the Commonwealth's evidence of necessary elements 'is later shown to be incredible or conclusively incorrect' "). "Where, as here, the evidence at trial

---

[13]Although neither the defendant nor the Commonwealth was required to produce evidence which would have resolved the issue whether the defendant had been placed in protective custody and, if so, on what dates, we are hard pressed to find a reason why something that could be so readily proved or disproved remained unanswered. In the end, however, the Commonwealth's case was not undermined by the fact that it did not present evidence to rebut the defendant's claim.

'turns solely on the credibility of [the defendant's] witnesses,' the Commonwealth's case cannot deteriorate." *Commonwealth* v. *Gomez*, 450 Mass. 704, 710-711 (2008), quoting from *Commonwealth* v. *Platt*, 440 Mass. 396, 404 (2003).

In any event, even if the defendant had been placed in protective custody at some point, there was ample evidence to support the conviction on the theory that the defendant was not living at 691 State Street on March 31, 2010. Indeed, Boyd's testimony alone suffices to establish beyond a reasonable doubt that the defendant knowingly provided a false address to Detective Duda on March 31, 2010.[14]

There also was sufficient evidence to support the conviction on the ground that the defendant had changed his address without notifying the authorities. Even assuming that the defendant was returned to "the streets" of Springfield at the behest of the district attorney, this fact did not relieve him of his obligation to report that he was now homeless and was no longer living at 691 State Street. See *Commonwealth* v. *Scipione*, 69 Mass. App. Ct. 906, 907 (2007).

2. *Admission of SORB and probation records.* The defendant's argument that the admission in evidence of records maintained by SORB and the probation department violated his right under the Sixth Amendment to the United States Constitution to confront witnesses is meritless. The SORB documents at issue consisted of verification forms and letters sent by SORB to the defendant at various addresses. The probation records consisted of an intake form and a letter sent to the defendant by Cadieux. In both instances, the person who created the documents at issue testified at trial and was subject to cross-examination. Thus, the defendant's right of confrontation was not implicated. Moreover, as we recently held in *Commonwealth* v. *Fox*, 81 Mass. App. Ct. 244, 245 (2012), even in the absence of a witness who created the records, the admission in evidence

---

[14]The dissent states that the defendant and his girlfriend were staying with Boyd on March 31, 2010. This assertion ignores our obligation to view the evidence in the light most favorable to the Commonwealth. Furthermore, even though Boyd's testimony was "somewhat confusing and contradictory," as the dissent posits, Boyd never testified that the defendant was living with her on March 31, 2010, while in response to the question, "He left in March?" she answered, "Yes."

of business records kept by SORB did not violate the defendant's constitutional rights where the records were kept in the ordinary course of SORB's affairs, were prepared and maintained by the public officials as required by the statute, and were not for the purpose of establishing an essential fact at trial. The records at issue undeniably satisfied these conditions.

We also reject the defendant's contention that the SORB records were inadmissible because they included references or were addressed to aliases ("Tony Johnson" and "Anthony Ramon") used by the defendant. The defendant did not object to the admission of the records on this basis, and even if he had objected, we discern no prejudice in view of the fact that the defendant acknowledged at trial that he had used those very same aliases.

3. *Request for new counsel.* On the morning of the day the subsequent offender trial commenced, defense counsel informed the judge that the defendant wanted to continue the case in order to hire his own attorney.[15] Although the defendant was not given an opportunity to explain himself, the record does not disclose any valid reasons to discharge defense counsel. While the better course would have been to "permit [the] defendant to advance his reasons for wanting to discharge his attorney" so that the judge could exercise his discretion "on an informed basis," *Commonwealth* v. *Moran*, 388 Mass. 655, 659 (1983), quoting from *Lamoureux* v. *Commonwealth*, 353 Mass. 556, 560 (1968), in order to demonstrate prejudice the defendant must present "a valid reason to discharge his attorney." *Commonwealth* v. *Moran, supra* at 660. In the absence of any such reason, we have no basis for concluding that the judge abused his considerable discretion by not initiating further inquiry into the defendant's request.[16] See *Commonwealth* v. *Clemens*, 77 Mass. App. Ct. 232, 237-238 (2010) (although judge failed to provide defendant adequate opportunity to explain his reason-

[15]The subsequent offender trial took place four days after the trial on the failure to register charge.

[16]This is especially true in light of the defendant's "eleventh hour" request to continue the trial. See *Commonwealth* v. *Johnson*, 424 Mass. 338, 342 (1997); *Commonwealth* v. *Lepper*, 60 Mass. App. Ct. 36, 53 (2003).

ing, no abuse of discretion where there was lack of sufficient facts warranting new counsel).

*Judgment affirmed.*

GRAHAM, J. (dissenting). I conclude that the evidence was insufficient to support the defendant's conviction; therefore, I dissent.[1]

The Commonwealth alleged two things: that (a) on March 31, 2010, the defendant was not living at the address that he had provided to the Springfield police department, and (b) between March 31, 2010, and April 30, 2010, the defendant changed his address without notifying the authorities of the change.

The testimony at trial was that on March 31, 2010, the defendant met with Detective Tracy Duda of the Springfield police department's sex offender registry unit for the purpose of fulfilling his obligation to register as a sex offender. At that time, the defendant and his girlfriend were staying with the girlfriend's friend, Shatina Boyd, a tenant at 691 State Street, apartment 3L, in Springfield.[2] Duda helped the defendant fill out the sex offender registration form, reviewed the requirements with him, and read the requirements aloud to him. The defendant, a special education student who dropped out of school after repeating the seventh grade, was unable to read.

---

[1] The defendant was found guilty on the charge of failure to register as a sex offender, second offense, and, immediately thereafter admitted to a pending charge of violation of probation.

On the violation of probation charge, the judge sentenced the defendant on count one of the underlying indictment (on which the defendant had previously only been sentenced to probation) to a term of no less than three and one-half years, nor more than four and one-half years, to be served in State prison. On count two, the judge ordered the defendant to serve a concurrent sentence of between three and one-half and four and one-half years in State prison. On the new conviction of failure to register as a sex offender, the judge sentenced the defendant to five years' probation, to be served from and after the committed portion of his sentences.

During the sentencing proceeding, the judge commented that the defendant had several times failed to comply with registration requirements but had not committed any new sex crimes in the last five years.

[2] Neither the defendant nor his girlfriend paid Boyd any rent for staying at the apartment.

The completed registration form contained several errors. The form listed the date of registration as the "third day of the 31st month" of 2010, and listed the defendant as Tony Johnson, a name that had been associated with the defendant in the past. Most importantly, the defendant's address was listed, improperly, as *619* State Street, apartment 3L, instead of *691* State Street, apartment 3L.

Shortly after the defendant completed the registration form, he and his girlfriend were forced to leave 691 State Street because Boyd was evicted for having too many people and too much traffic in the apartment.[3] Boyd's testimony regarding the date when the defendant left her apartment, though somewhat confusing and contradictory, is consistent with the defendant's testimony that he was living at the apartment on March 31, 2010.[4]

While the Commonwealth's evidence showed that the defendant did not live at 619 State Street, the address on the form, the Commonwealth's own witness, Boyd, substantiated that the numbers on the form were mistakenly reversed, by her testimony

---

[3]After Boyd was evicted, she moved in for several months with a friend who lived in a fourth-floor apartment at 691 State Street.

[4]Boyd testified as follows:

*Q.:* "When did [the defendant] come to live with you?"

*A.:* "Around Christmas time."

. . .

*Q.:* "And turning your attention to April 8th of 2010, did the defendant . . . live with you at that time?"

*A.:* "No. I got evicted."

. . .

THE COURT: "And when is the last time he lived at your residence?"

*A.:* "*I'll say the end of March*, when it started getting nice out, he wasn't living with me" (emphasis supplied).

. . .

*Q.:* "When you say that he was living back and forth,, did he stay with you every day of the week?"

*A.:* "Towards the end he was staying with me, and then he would leave and then he would come back. But I know he was with me from December to March."

that the defendant and his girlfriend had been staying at her apartment at 691 State Street. Thus, the evidence did not establish beyond a reasonable doubt that the defendant provided a false address. As to the question whether the defendant was living at Boyd's apartment on March 31, 2010, the date the form was filled in, while the Commonwealth's evidence established that the defendant was not living at Boyd's apartment on April 8 and thereafter, it did not establish beyond a reasonable doubt that the defendant was not living at that address on March 31. See note 4, *supra.* When asked, "When is the last time he lived at your residence?" Boyd responded, "I'll say the end of March . . . ." Moreover, other than April 8, Boyd's testimony in general as to time periods was based on estimates and attempted reconstructions, none of which is sufficient to establish beyond a reasonable doubt that the defendant was not living at that address on the date he signed the form.[5] The Commonwealth's evidence thus was not sufficient to prove the charge of giving a false address beyond a reasonable doubt.

In his defense at trial the defendant testified that during the first part of April, he suffered a gunshot wound and, thereafter, became a material witness for the Hampden County district attorney's office. He later testified as a Commonwealth witness before a Hampden County grand jury. During the time he was a material witness, for most of April, 2010, the defendant was in protective custody, living in a motel in Connecticut at the direction of a Hampden County assistant district attorney referred to by the defendant by name.

Finally, the defendant testified that, after he appeared before the grand jury as a Commonwealth witness, the district attorney's office returned him to Springfield. After his return to Springfield, he was homeless and living on the street prior to his arrest on April 30, 2010, on the current charges. The defendant's testimony on these key matters was essentially unchallenged.

Even if the Commonwealth's evidence established that the

---

[5]Further, given Boyd's testimony that, "[a]t the end," after the initial two- or three-month period the defendant was living with her, he was moving "back and forth," plus the confusion as to the exact date the defendant moved out (see note 4, *supra*), the conclusion that he was not living at Boyd's apartment on March 31 and that he knowingly gave a false address — facts the Commonwealth had to prove beyond a reasonable doubt — is even weaker.

defendant failed to comply with the registration requirements, the Commonwealth has failed to make the necessary showing of criminal intent.[6,7] "Concerning whether the defendant 'knowingly' provided false information, G. L. c. 6, § 178H (a), does not require the Commonwealth to prove that a defendant intended to deceive the board, but the Commonwealth must prove that he knew the information was false." *Commonwealth* v. *Rosado*, 450 Mass. 657, 662 (2008), citing *Commonwealth* v. *Fondakowski*, 62 Mass. App. Ct. 939, 940 (2005) (sufficient evidence that defendant knowingly provided false information to board where he had home in Northampton but placed "HOME-LESS" as his address and "Any-where I can live" as his city). On this record, the evidence was insufficient to prove beyond a reasonable doubt that the defendant *knowingly* provided false information about his residence or *knowingly* failed to provide notice of his intent to change his address.

Accordingly, I would reverse the conviction of failure to register as a sex offender and direct the entry of a judgment of not guilty on that charge. While the order finding a violation of probation and imposing sentence on the offense on which the violation of probation was found is not part of this appeal, in my view, because the conviction of failing to register in the present case, which I believe should be reversed, was one of the main bases for finding a violation of probation, the sentence imposed upon the revocation of probation should also be reconsidered.

---

[6]The showing is insufficient when the evidence is evaluated at the close of the Commonwealth's case, that is, regardless of whether the fact finder credited the defendant's testimony. If the fact finder believed the defendant's testimony, the sufficiency of the evidence on the element of intent becomes even more questionable.

[7]With regard to the charge of failure to report a change of address, an additional question arises. General Laws c. 6, § 178E(h), as appearing in St. 1999, c. 74, § 2, requires a sex offender "who intends to change his residence within a city or town" to provide notice "no later than ten days prior to establishing such new residence." However, the defendant here, who was evicted and was homeless, apparently had not "establish[ed] [a] new residence." General Laws c. 6, § 178F½, provides that a homeless sex offender must appear at the local police department every thirty days to verify that the registration information is accurate. The date the defendant here would have been required to report to the police department to verify registration information was April 30, thirty days after the March 31 registration; however, that was the date he was arrested. Moreover, he was not tried under the theory that he failed to verify registration information thirty days after his March 31 registration.