NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-821                                          Appeals Court

COMMONWEALTH  vs.  JORGE G. DUARTE.

No. 18-P-821.

Bristol.     October 3, 2019. - April 8, 2020.

Present:  Green, C.J., Rubin, & Agnes, JJ.


Assault and Battery.  Practice, Criminal, Assistance of counsel,
    Continuance, Judicial discretion.  Constitutional Law,
    Assistance of counsel.  Due Process of Law, Assistance of
    counsel.  Attorney at Law, Attorney-client relationship,
    Withdrawal.



    Complaint received and sworn to in the New Bedford Division
of the District Court Department on January 26, 2017.

    Motions to discharge counsel and for a continuance were
heard by Daniel W. O'Malley, J., and the case was tried before
Edward F.X. Lynch, J.


    Sharon L. Sullivan-Puccini for the defendant.
    Robert P. Kidd, Assistant District Attorney, for the
Commonwealth.


    AGNES, J.  A District Court jury convicted the defendant,

Jorge G. Duarte, of assault and battery in violation of G. L.

c. 265, § 13A (a), arising out of his participation in an attack

on another inmate that occurred at the Bristol County jail and house of correction (jail). On appeal, the defendant argues that the judge abused his discretion by denying the defendant's request to hire an attorney and, by implication, to obtain a continuance of the trial that was scheduled for that day, without affording him an opportunity to be heard. The defendant also argues that his trial counsel was ineffective by failing to object to the repeated description by the prosecutor and witnesses of the incident as an "assault," failing to object to evidence that the incident occurred in a specific area in the jail that housed "troublemakers," and failing to deliver a proper closing argument.

Despite the last minute nature of the defendant's request to hire an attorney and the inevitable continuance that it would necessitate, under settled law the defendant was entitled to be heard. In such circumstances, "the judge [must] give a defendant an opportunity to make known his reasons for objecting to appointed counsel before the judge rules on the request." Commonwealth v. Lee, 394 Mass. 209, 217 (1985). For this reason, after oral argument and consistent with the procedure followed in Commonwealth v. Moran, 388 Mass. 655, 658-659 (1983), we remanded the case to the judge who denied the defendant's motion with instructions to conduct an evidentiary hearing at which the defendant would have an opportunity to

testify without limitation on the subject of his pretrial request.  The judge conducted such a hearing, made findings and rulings, and concluded that the defendant's request was without merit.  Because this determination is well supported by the record, and we are unable to discern any prejudice to the defendant, we reject the defendant's argument that he is entitled to any relief.  We also reject the defendant's claim that his trial counsel provided ineffective assistance.  Therefore, we affirm the defendant's conviction.

1.  Background.  a.  The incident.  On January 6, 2017, at approximately 4:43 P.M., inmates housed in the defendant's unit at the jail were released from their cells for dinner.[1]  Shortly thereafter, an inmate, Tyrell Pina, was pulled to the ground by another inmate, Jose Cruz, and then attacked by Cruz, the defendant, and a third inmate.  A video recording (video) of the incident from the jail's surveillance system was played for the jury; it shows the defendant repeatedly punching Pina in the head area while Cruz and the third inmate were simultaneously kicking Pina.[2]  After about one minute, correction officers were

---

[1] The defendant was housed in the "HB Unit" of the jail which was described as housing persons waiting to be sentenced. The various witnesses, all of whom worked at the jail, largely referred to these persons as "inmates."

[2] After a short period of time, the third inmate stopped while the defendant and Cruz continued to attack Pina.

able to control the scene.  The incident was witnessed by two testifying correction officers who identified the defendant as one of the persons depicted in the video.[3]  Pina suffered injuries and required treatment at a local hospital.  While a nurse was examining the defendant for injuries, the defendant made a statement suggesting that Pina had previously shot at the defendant's car while his son was in it, and the defendant asked the nurse, "What would you have done?"

b.  Procedural history.  A complaint issued on January 26, 2017, alleging the defendant committed assault and battery in violation of G. L. c. 265, § 13A (a).  The defendant was arraigned on March 1, 2017.  The following day, appointed counsel David P. Tibbetts appeared for the defendant.[4]  The case proceeded with pretrial hearings on March 23, 2017, April 6, 2017, and April 19, 2017.  The defendant tendered conditional guilty pleas at each pretrial hearing date, but was unable to resolve the case on terms that were satisfactory to him.

The first trial date was June 1, 2017.  On that date, the Commonwealth reported that it was ready for trial and represented that it had five witnesses present.  The defendant's

---

[3] Other employees from the Bristol County sheriff's office that investigated the incident also testified.  Pina did not testify.

[4] The appointed attorney who represented the defendant at arraignment withdrew.

attorney indicated that he was also ready for trial but that the defendant did not wish to proceed with the trial on that date because he had an open criminal case and a probation violation case both pending in the Superior Court. The defendant was represented by a different appointed attorney in those cases. The defendant was concerned about the potential negative impact that a disposition in his District Court case might have on the pending Superior Court cases. Attorney Tibbetts represented to the court that he communicated with the defendant's Superior Court attorney and relayed to the court that it was that attorney's opinion that it would be advantageous to the defendant to continue the District Court case until after the Superior Court cases were resolved. Over the objection of the Commonwealth, the judge continued the trial until July 25, 2017, to afford the defendant an opportunity to fully consult with his Superior Court attorney. At no point on the June 1, 2017, trial date, or the three earlier pretrial hearing dates, did the defendant express dissatisfaction with Attorney Tibbetts.

When the defendant's case was called for trial on July 25, 2017, the defendant was not present in the court room; he was instead in the "lock up" area of the court house. The Commonwealth again reported it was ready for trial and its witnesses were again present. Attorney Tibbetts answered that he too was ready for trial but that the defendant wanted a new

attorney that he would hire privately. The Commonwealth objected to a further continuance, representing that the defendant had not resolved his probation violation case when brought before the Superior Court on July 10, 2017, and July 24, 2017, and that the Commonwealth's witnesses had now been present for the defendant's District and Superior Court cases on four occasions. After a brief recess, the case was called again, with the defendant still absent from the court room. Attorney Tibbetts renewed the defendant's request as follows:

> "I went back downstairs and spoke with the client. He's very upset. He feels that I'm not invested enough with his case, that he feels that I haven't spent enough time with him on the case, he feels that this is -- as he put it, it's his life and he needs somebody who will be fully invested. He had a -- a case in Superior Court, which is why this case got continued. That Superior Court case -- I understand he fired that lawyer and he's supposed to be hiring private counsel. And as far as this case goes, he feels that I put the case on for speedy trial without consulting with him, although my memory is we had an oral discussion about it in court.

> "I would point out that the case is four and a half months old at this point. I don't -- I think we're kind of out of speedy trial area anyway with the age of the case. But it is also a young case in terms of him getting a new lawyer; it's only four and a half months old. He does -- clearly does not want me as his lawyer, he wants me out -- off, doesn't feel like I've been doing a good job for him. As I told you, I'm ready to go and -- I have to renew the motion because of his vigorous discussion with me downstairs."

The judge denied the request. After a second brief recess, the defendant was brought into the court room for trial before a different judge. Although Attorney Tibbetts made reference to

the defendant's request before the second judge, the defendant
was not afforded an opportunity to be heard on the issue of
hiring an attorney, and the trial judge did not reconsider the
earlier ruling denying the defendant's request.  A trial by jury
commenced and resulted in the defendant's conviction.

2.  Discussion.  a.  Request to discharge counsel and
implied request for a continuance.  On appeal, the defendant
argues that the judge erroneously denied his request to hire an
attorney without permitting him to be present in the court room
to articulate his reasons for wanting new counsel and that this
error requires reversal of his conviction.  The defendant's oral
request, made through counsel, was effectively a motion to
discharge counsel and, although not explicitly stated, a request
for a continuance so that, if allowed, the new attorney could
adequately prepare for trial.[5]  See Commonwealth v. Britto, 433
Mass. 596, 600 (2001) ("the most common problem accompanying
[motions for appointment of new counsel is] the need for a
continuance of the trial if the motion is allowed").  Such a

---

[5] In these circumstances, we do not view the defendant's
request differently because he suggested that he would retain
private counsel instead of asking the court to appoint
substitute counsel.  See Commonwealth v. Tuitt, 393 Mass. 801,
803-804 (1985), quoting Commonwealth v. Connor, 381 Mass. 500,
503 (1980) ("The right to employ counsel of one's choice,
particularly when exercised on the day of trial, is, 'in some
circumstances, . . . subordinate to the proper administration of
justice'").

request requires the judge to weigh the "interests of the courts and the public in efficient trial administration" as well as the prejudice to the opposing party against the "showing of good cause to support the defendant's motion." Commonwealth v. Chavis, 415 Mass. 703, 712 (1993). Good cause includes "a conflict of interest, incompetence of counsel, or an irreconcilable breakdown in communication." Id. The test is not a "mechanical" one. Id. at 711. It has been repeatedly held that "[a] motion to discharge counsel, when made on the eve of trial, or on the day on which trial is scheduled to begin, 'is a matter left to the sound discretion of the trial judge.'" Commonwealth v. Tuitt, 393 Mass. 801, 804 (1985), quoting Moran, 388 Mass. at 659.

To properly exercise that discretion, it has also been held that "when a defendant requests that new counsel be appointed, the judge should allow the defendant to state his reasons for wanting to discharge his attorney so that the judge's discretion can be exercised on an informed basis." Lee, 394 Mass. at 217, citing Moran, 388 Mass. at 659. Although some of the cases, such as Lee, 394 Mass. at 217, speak in terms of what the judge "should" do when faced with such a request, we reiterate that when a defendant requests a discharge of counsel and a continuance on the eve of or the first day of trial, the judge must afford the defendant the opportunity to be heard before

ruling on the request. See Tuitt, 393 Mass. at 804 (defendant must be permitted to present reasons for dissatisfaction on motion to discharge counsel); Moran, supra ("the decision to honor a defendant's request for change of appointed counsel is a matter left to the sound discretion of the trial judge, but after he has given the defendant the opportunity to articulate his reasons"); Commonwealth v. Clemens, 77 Mass. App. Ct. 232, 23 (2010) ("We acknowledge the pressure a District Court judge faces with large volumes of cases and the need to process them efficiently, but such concerns cannot excuse the failure to provide an opportunity for the defendant to address the court about dissatisfaction with counsel"). Cf. Commonwealth v. Delacruz, 463 Mass. 504, 508-511 & n.8 (2012) (rejecting argument that defendant was not afforded opportunity to be heard where defendant made "tentative inquiries" at pretrial hearing about whether trial date could be moved so that potential private counsel could enter appearance and "no mention was made at any time that appointed counsel was insufficient in any way"). "The appropriate practice, which should have been followed at the time of trial in this case, is to hear the defendant's offer of specifications so that the judge's discretion will be exercised on an informed basis" (quotation and citation omitted). Moran, supra. Although this hearing need not "satisfy a particular formula[,] . . . the judge [must]

give a defendant an opportunity to make known his reasons for objecting to appointed counsel before the judge rules on the request."  Lee, supra.[6]

The defendant in this case was not afforded an adequate opportunity to articulate his reasons supporting his request for new counsel.  When the issue of representation by counsel was discussed in court, the defendant was not present in the court room and was instead in the lock-up area of the court house.[7]  In

---

[6] See Chavis, 415 Mass. at 710-712 (defendant had fair opportunity to explain dissatisfaction where he made pro se oral motion to discharge counsel on day of trial and was afforded opportunity to personally explain reasons for request); Lee, 394 Mass. at 217 (defendants had adequate opportunity where "[t]hroughout the pretrial proceedings and at trial the defendants were given ample opportunity to voice their concerns about appointed counsel, and they did so"); Tuitt, 393 Mass. 805 (rejecting argument judge did not inquire of defendant where judge displayed "exemplary patience by listening to the defendant express, on three separate occasions, his charge that counsel had not made any effort to 'properly prepare this case'"); Commonwealth v. Appleby, 389 Mass. 359, 368-369 (1983) (defendant was given two opportunities to speak but did not advance any reasons of his own as to why he was dissatisfied with counsel); Commonwealth v. Price, 17 Mass. App. Ct. 955, 957 (1983) (judge made adequate inquiry).  Cf. Moran, 388 Mass. at 657-658, 660 (court did not approve of judge's handling of oral requests for new counsel on two occasions, one just before trial and one during trial, where judge did not inquire of defendant and instead said "quite clearly, he is not going to be afforded the opportunity to change counsel"); Clemens, 77 Mass. App. Ct. at 238 ("judge's colloquy with the defendant, once he was given the opportunity to speak on this subject, was inadequate both for the defendant to justify his dissatisfaction with counsel and for the judge to make an informed decision").

[7] We do not fault the defendant for not speaking up to address the trial judge directly once the defendant was brought into the court room after he learned that his request was

these circumstances, the defendant could have had meaningful information to add on the issue, and the judge's failure to provide the defendant the opportunity to be heard precluded the judge from making an informed exercise of discretion. What makes a judge's choice to allow or deny a motion an exercise of sound judicial discretion is the fair weighing of the factors relevant to the decision. See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

As noted earlier, we remanded the case (consistent with the procedure followed in Moran, 388 Mass. at 658) to the motion judge who had denied the defendant's request, with directions to conduct an evidentiary hearing that afforded the defendant, defendant's counsel, and the trial prosecutor the opportunity to present testimony on the subject of the defendant's request. At this hearing, the defendant testified that he wanted to discharge his attorney because the attorney had not prepared the case for trial adequately; failed to meet with or discuss the case with the defendant to his satisfaction; had not responded to telephone calls; had not fit him for clothing; had not and would not fight for him; and that there was a breakdown in communications. The motion judge prepared detailed findings of

---

denied. The defendant "was entitled to proceed on the basis of the conventional understanding that a litigant's communications with the court are handled by the litigant's lawyer." United States v. Prochilo, 187 F.3d 221, 226-227 (1st Cir. 1999).

fact.  He evaluated the defendant's testimony and noted that "the undersigned judge does not credit [the defendant's stated] reasons and, instead, finds that the defendant's wish to discharge his attorney on July 25, 2017 was nothing more than a back-door attempt to achieve a (second) continuance of his trial given that his Superior Court probation violation case had still not been resolved."  These findings, which are well supported by the record, are fatal to the defendant's claim that he was prejudiced by the motion judge's handling of his request or is entitled to reversal of his conviction.  Even in cases where the judge fails to afford the defendant an opportunity to be heard on a request to discharge counsel, a new trial is not required where that opportunity is later afforded to the defendant and it can be determined that the request was without merit.  See Moran, supra at 658-659 (defendant was not prejudiced by failure to hear from defendant prior to trial where, on remand, trial judge held hearing with defendant, defense counsel, and prosecutor, and judge determined new trial was not warranted); Clemens, 77 Mass. App. Ct. at 239 (reversal not required where defendant gave reasons posttrial and appellate court determined there was insufficient cause to remove counsel).  See also Lamoureux v. Commonwealth, 353 Mass. 556, 560-561 (1968) (exceptions overruled despite failure of trial judge to hear offer of specifications where defendant was later afforded

evidentiary hearing before single justice of Supreme Judicial Court who made detailed findings that demonstrated inadequacy of complaints).

b.  Ineffective assistance of counsel.  It is regrettable that the prosecutor and witnesses repeatedly referred to the incident using the conclusory term "assault" where the defendant was on trial for assault and battery.  See Commonwealth v. Dargon, 457 Mass. 387, 396 (2010) (in rape case, failure to redact words "assault" and "assailant" that appeared twenty-three times on documentary evidence was error); Commonwealth v. Coleman, 366 Mass. 705, 711 (1975) (medical examiner not permitted to testify that death was "homicide"); Commonwealth v. McNickles, 22 Mass. App. Ct. 114, 121 n.10 (1986) ("Prosecutors would be well advised to take special care to instruct their witnesses, prior to putting them on the stand and asking their opinions, to avoid such terms as 'rape,' 'sexual assault,' and the like").  The incident could have been adequately described for the jury in a myriad of other ways without using the term that constituted an element of the crime for which the defendant was on trial.  While we discern no such intent from the prosecutor or witnesses in this case, avoiding the use of the term "assault" would have eliminated the risk that the jury could have interpreted the questioning or testimony as an opinion from the Commonwealth or law enforcement witnesses on

the issue of the defendant's guilt.  See Mass. G. Evid. § 704 (2020).

However, even if the failure to object to this characterization of the incident fell measurably below the standards of the ordinary fallible lawyer, we reject the defendant's claim of ineffective assistance of counsel based on this error as the defendant has failed to demonstrate he was "likely deprived . . . of an otherwise available, substantial ground of defence."  Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).  See Commonwealth v. Randolph, 438 Mass. 290, 295-296 (2002) (equating ineffective assistance of counsel standard to substantial risk of miscarriage of justice standard in cases where waiver stems from omission by defense counsel).  Based on the evidence presented at trial, there was no substantial risk of a miscarriage of justice.  The issue was not whether the defendant violently and repeatedly struck Pina.  That was abundantly clear from the video and the testimony.  Instead, the issue was whether based on the totality of the evidence -- particularly the lack of any audio and the circumstances of living in jail -- the Commonwealth had proved beyond a reasonable doubt that the defendant was not acting with justification, i.e., acting in self-defense.[8]

---

[8] The judge instructed the jury on self-defense over the Commonwealth's objection.

Similarly, the defendant has not demonstrated ineffective assistance based on counsel's failure to object to the evidence that the incident occurred in a "maximum unit for jailers" and later himself elicited on cross-examination from a witness that the unit housed "troublemakers."  While the defendant's presence in this unit invited a negative inference about the defendant's character (which was mitigated by a forceful limiting instruction), permitting and eliciting this evidence may have been a strategic decision because it invited that same inference about Pina's character.  An attack on Pina's credibility provided needed support for the defendant's claim of self-defense and furthered the theory advanced by counsel that people in jail sometimes have problems with each other, that fights like this could occur at any time, and that jail was a dangerous place to be.  On this record, considering the other evidence that would inevitably be before the jury, the potential benefits of the evidence, and the lack of an affidavit from defense counsel, we cannot say that counsel's decision was "manifestly unreasonable."[9]  Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015).  See Commonwealth v. Zinser, 446 Mass. 807, 812 (2006)

---

[9] There likely are circumstances where it would fall measurably below the ordinary fallible lawyer standard to permit admission of evidence that the defendant is not only in jail but also in a specific part of a jail for troublemakers.

(when claim of ineffective assistance of counsel is raised for first time on direct appeal, relief is not available unless "the factual basis appears indisputably on the trial record" [quotation and citation omitted]).

Last, the defendant argues his counsel was ineffective by making the statement in closing that, "in [his] client's opinion, this evidence doesn't rise to the level of guilty beyond a reasonable doubt."  Counsel should not have identified his client's opinion as the reason that the evidence did not rise to the reasonable doubt standard.  Defense counsel's statement created a risk that the jury would understand the statement as counsel disassociating himself from the defendant's position.  Instead, the statement should have been more forcefully delivered by simply arguing that the evidence presented to the jury did not meet this standard.[10]  However, we reject the defendant's claim that this statement or trial counsel's entire summation left him "denuded of a defense" or "conceded guilt."  See Commonwealth v. Moseley, 483 Mass. 295, 307 (2019).  This is not a case where at the "eleventh hour" counsel abandoned a substantial defense for one that was

_____

[10] It may be that this is what counsel intended to convey. "[I]t is far too easy to examine a transcript and point to ways to 'do it better.'"  Commonwealth v. Moseley, 483 Mass. 295, 308 (2019), quoting Commonwealth v. Degro, 432 Mass. 319, 333 (2000).

"exceptionally weak," Commonwealth v. Street, 388 Mass. 281, 281, 286 (1983), or a case where counsel asked the jury to believe the testimony of a witness "a hundred percent" where belief of that testimony would have required the jury to convict the defendant of murder in the first degree, see Commonwealth v. Triplett, 398 Mass. 561, 568-569 (1986). Instead, faced with a challenging case where the defendant was recorded on video committing the crime, and the video was corroborated by multiple witnesses, counsel consistently advanced the theory discussed supra and concluded by asking the jurors to "agree that my client is not guilty." The defendant failed to satisfy the prejudice prong set forth in Saferian, 366 Mass. at 96.

Judgment affirmed.